**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| E.M.P.C.* | ) |
| D.D.S.C.* | ) |
| G.A.V.* | ) |
| M.L.C.L.* | ) Case No. |
| A.C.M.* | ) **COMPLAINT FOR DECLARATORY,** |
| Y.N.M.* | ) **INJUNCTIVE, AND MANDAMUS** ) **RELIEF** |
| D.E.O.G.* | ) |
| A.A.B.F.* | ) |
| M.P.T.* | ) |
| I.O.M.C.* | ) |
| Y.S.M.* | ) |
| Y.A.R.* | ) |
| L.A.R.M.* | ) |
| L.M.G.A.* | ) |
| A.H.S.* | ) |
| A.A.H.G.* | ) |
| E.A.B.P.* | ) |
| Y.P.P.* | ) |
| *Plaintiffs*, | ) |
| v. | ) |

1

Kristi NOEM, Secretary of the Department )
of Homeland Security, in her official )
capacity; )
)
U.S. Department of Homeland Security; )
)
Joseph EDLOW, Director of U.S. )
Citizenship and Immigration Services, in )
his official capacity; )
)
U.S. Citizenship and Immigration Services. )
)
*Defendants*. )
)
)

* Plaintiffs proceeding under a pseudonym are indicated with an asterisk.

**INTRODUCTION**

1. This action challenges the federal government's indefinite suspension of the adjudication of adjustment-of-status applications filed by Cuban nationals under the Cuban Adjustment Act ("CAA").

2. Congress enacted the Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161 (1966), to establish a specific statutory pathway through which Cuban nationals who have been inspected and admitted or paroled into the United States and who have remained physically present in the United States for at least one year may apply to adjust their status to that of lawful permanent resident.

3. Plaintiffs fall squarely within the class of individuals Congress intended to protect through the Cuban Adjustment Act. Each Plaintiff was inspected and admitted or paroled into the United States and is physically present within the United States. After remaining in the United States for at least one year following their admission or parole, Plaintiffs became statutorily eligible to apply for adjustment of status pursuant to the Cuban Adjustment Act.

4. Plaintiffs properly filed applications for adjustment of status with United States Citizenship and Immigration Services ("USCIS") in accordance with the procedures established by Congress and implemented through federal immigration regulations.

5. Despite Plaintiffs' eligibility and properly filed applications, Defendants have implemented a policy suspending the adjudication of immigration benefit applications filed by Cuban nationals, including applications submitted pursuant to the Cuban Adjustment Act.

6. Defendants' policy relies on presidential entry restrictions issued under 8 U.S.C. §1182(f). That statute authorizes the President to suspend the entry of certain noncitizens into the United States when their entry would be detrimental to the interests of the United States.

7. However, Plaintiffs are not seeking entry into the United States. Plaintiffs are already present within the United States after having been inspected and admitted or paroled under the immigration laws administered by the Department of Homeland Security.

8. Adjustment of status under the Cuban Adjustment Act is a domestic administrative process available only to individuals who are physically present in the United States and who meet the statutory eligibility requirements established by Congress. It is not a process governing the admission of individuals from outside the United States.

9. By invoking entry-based authority under §1182(f) to suspend the adjudication of adjustment-of-status applications filed by individuals already present in the United States, Defendants have effectively transformed an entry restriction into a suspension of domestic immigration benefits.

10. Defendants' categorical suspension has left Plaintiffs' properly filed CAA adjustment applications indefinitely unadjudicated, depriving Plaintiffs of the statutory adjudication process created by Congress and exposing them to ongoing immigration enforcement consequences, including the risk of detention or removal before USCIS evaluates their eligibility for lawful permanent residence.

11. Defendants' suspension of adjudication violates the Administrative Procedure Act, exceeds Defendants' statutory authority, conflicts with the Cuban Adjustment Act, and deprives Plaintiffs of the procedural protections guaranteed by the Due Process Clause of the Fifth Amendment.

12. Plaintiffs therefore seek declaratory, injunctive, and mandamus relief requiring Defendants to resume and complete the adjudication of Plaintiffs' adjustment-of-status applications in accordance with the immigration laws enacted by Congress.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this action arises under the Constitution and laws of the United States. This Court also has jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§701–706. The Court has authority to grant mandamus relief under 28 U.S.C. §1361. Declaratory relief is authorized by 28 U.S.C. §§2201–2202.

14. Venue is proper in this District pursuant to 28 U.S.C. §1391(e) because at least one Plaintiff resides within the Southern District of Florida and Defendants are officers or agencies of the United States acting in their official capacities.

## PARTIES

15. Plaintiff **E.M.P.C**[1]. is a native and citizen of Cuba. *See Ex. B* (Cuban passport). On January 23, 2023, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On January 26, 2024, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

16. Plaintiff **D.D.S.C.** is a native and citizen of Cuba. *See Ex. A* (Cuban passport). On March 24, 2023, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On March 28, 2024, Plaintiff filed Form I-485, Application to Register Permanent Residence or Adjust Status, pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's

---

[1] A motion for leave of the Court for Plaintiffs to proceed under pseudonyms is being filed imminently.

application remains pending with USCIS.

17. Plaintiff **G.A.V.** is a native and citizen of Cuba. *See Ex. C* (Cuban passport). On May 22, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On May 27, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

18. Plaintiff **M.L.C.L.** is a native and citizen of Cuba. *See Ex. D* (Cuban passport). On May 22, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On May 27, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

19. Plaintiff **A.C.M.** is a native and citizen of Cuba. *See Ex. E* (birth certificate and Cuban passport). On January 2, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On February 3, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

20. Plaintiff **Y.N.M.** is a native and citizen of Cuba. *See Ex. F* (Cuban passport). On September 23, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On November 24, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

21. Plaintiff **D.E.O.G.** is a native and citizen of Cuba. *See Ex. G* (Cuban passport). On September 14, 2023, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On September 18, 2024, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

22. Plaintiff **A.A.B.F.** is a native and citizen of Cuba. *See Ex. H* (Cuban passport). On May 22, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record).

On May 27, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

23. Plaintiff **M.P.T.** is a native and citizen of Cuba. *See Ex. I* (Cuban passport). On January 21, 2023, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On March 15, 2024, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

24. Plaintiff **I.O.M.C.** is a native and citizen of Cuba. *See Ex. J* (Cuban passport). On November 11, 2023, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On November 15, 2024, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

25. Plaintiff **Y.S.M.** is a native and citizen of Cuba. *See Ex. K* (Cuban passport). On January 26, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On January 30, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

26. Plaintiff **Y.A.R.** is a native and citizen of Cuba. *See Ex. L* (Cuban passport). On January 26, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On January 30, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

27. Plaintiff **L.A.R.M.** is a native and citizen of Cuba. *See Ex. M* (Cuban passport). On January 26, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On January 31, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

28. Plaintiff **L.M.G.A.** is a native and citizen of Cuba. *See Ex. N* (Cuban passport). On May 8,

2023, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On May 10, 2024, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

29. Plaintiff **A.H.S.** is a native and citizen of Cuba. *See Ex. O* (Cuban passport). On May 8, 2023, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On May 10, 2024, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

30. Plaintiff **A.A.H.G.** is a native and citizen of Cuba. *See Ex. P* (Cuban passport). On May 8, 2023, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On May 10, 2024, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

31. Plaintiff **E.A.B.P.** is a native and citizen of Cuba. *See Ex. Q* (Cuban passport). On June 16, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On June 20, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

32. Plaintiff **Y.P.P.** is a native and citizen of Cuba. *See Ex. R* (Cuban passport). On June 16, 2024, Plaintiff was inspected and admitted or paroled into the United States. *Id*. (I-94 record). On June 20, 2025, Plaintiff filed Form I-485 pursuant to the Cuban Adjustment Act. *Id*. (I-485 receipt notice). Plaintiff's application remains pending with USCIS.

33. Defendant, **Kristi Noem**, is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"), a position to which she was confirmed by the Senate on January 25, 2025. In this capacity, she is charged with the administration and enforcement of the immigration laws, pursuant to 8 U.S.C., §1103.

34. Defendant, **Joseph B. Edlow**, is sued in his official capacity as the Director of the U.S. Citizenship and Immigration Services ("USCIS"), a position to which he was confirmed by the Senate on July 15, 2025. In this capacity, he is charged with the administration and enforcement of the immigration laws, pursuant to 8 U.S.C., §1103. Furthermore, as director of USCIS, Joseph B. Edlow is responsible for enforcing the Immigration and Nationality Act ("INA") and for adjudicating applications to adjust status, and providing foreign nationals with evidence of their legal status in the United States.

35. The Defendants, **U.S. Citizenship and Immigration Services** ("USCIS") and **U.S. Department of Homeland Security** ("DHS") are the agencies overseeing the enforcement of the INA and for adjudicating applications to adjust status as well as providing foreign nationals with evidence of their legal status in the United States.

## STATUTORY FRAMEWORK
### (The Cuban Adjustment Act)

36. Congress enacted the Cuban Adjustment Act ("CAA"), Pub. L. No. 89-732, 80 Stat. 1161 (1966), to establish a statutory mechanism through which Cuban nationals who have been inspected and admitted or paroled into the United States and who have remained physically present in the United States for at least one year may apply to adjust their status to that of lawful permanent resident.  The statute provides, in relevant part, that: "the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States … and has been physically present in the United States for at least one year may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." Pub. L. No. 89-732, § 1, 80 Stat. 1161 (1966).

37. Through this statute, Congress created a specific pathway through which Cuban nationals may

obtain lawful permanent residence without departing the United States.

38. Eligibility for adjustment under the Cuban Adjustment Act requires that an applicant be a native or citizen of Cuba who (1) was inspected and admitted or paroled into the United States and (2) has been physically present in the United States for at least one year following such admission or parole.

39. The Immigration and Nationality Act defines the term "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. §1101(a)(13)(A). Individuals who are admitted into the United States enter the country pursuant to authorization granted by immigration officials following inspection at a port of entry.

40. The Immigration and Nationality Act also authorizes the Secretary of Homeland Security to grant parole into the United States to certain noncitizens for urgent humanitarian reasons or significant public benefit. 8 U.S.C. §1182(d)(5)(A). Parole allows a noncitizen to enter and remain physically present in the United States even though the individual may not have been formally admitted.

41. Noncitizens who are paroled into the United States are lawfully authorized to enter and remain physically present in the country pursuant to the authority of the Department of Homeland Security.

42. Congress expressly included both categories—individuals who were "inspected and admitted" and individuals who were "paroled"—within the class of persons eligible to apply for adjustment of status under the Cuban Adjustment Act.

43. The statutory structure therefore limits eligibility for adjustment under the Cuban Adjustment Act to individuals who are already physically present in the United States following admission

or parole.

44. Applications for adjustment of status under the Cuban Adjustment Act are adjudicated by United States Citizenship and Immigration Services pursuant to the Immigration and Nationality Act and implementing regulations. See 8 C.F.R. §§245.2(a), 103.2(b).

45. Although adjustment of status generally proceeds under INA § 245, see 8 U.S.C. § 1255, Congress enacted the Cuban Adjustment Act as a more specific statutory pathway applicable to Cuban nationals who have been inspected and admitted or paroled into the United States and who have remained physically present in the United States for at least one year. The Cuban Adjustment Act therefore governs a defined class of applicants already present in the United States and supplements the broader adjustment framework with a specific congressionally created avenue to lawful permanent residence. See 8 U.S.C. § 1255; Pub. L. No. 89-732, 80 Stat. 1161 (1966).

### BACKGROUND

46. On June 4, 2025, President Donald J. Trump issued Presidential Proclamation 10949[2] pursuant to 8 U.S.C. §1182(f), restricting the entry of certain foreign nationals into the United States.

47. Section 1182(f) authorizes the President to suspend the entry of foreign nationals into the United States when their entry would be detrimental to the interests of the United States.

48. Proclamation 10949 regulates the entry of foreign nationals into the United States and applies to individuals outside the United States seeking admission.

49. Cuba was listed among the countries subject to partial entry restrictions.

---

[2] "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats." See 90 FR 24497 (June 4, 2025) at https://www.federalregister.gov/documents/2025/06/10/2025-10669/restricting-the-entry-offoreign-nationals-to-protect-the-united-states-from-foreign-terrorists-and.

50. On November 27, 2025, USCIS issued Policy Alert PA-2025-26[3] directing adjudicators to consider country-specific factors identified in Proclamation 10949 when adjudicating certain discretionary immigration benefits.

51. On December 2, 2025, USCIS issued Policy Memorandum PM-602-0192[4] placing a hold on pending immigration benefit applications filed by nationals of countries identified in the proclamation, including Cuba.

52. The memorandum provides no definite timeline for lifting the adjudication hold.

53. On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194[5] expanding the list of countries subject to the adjudication hold.

54. These policy directives have resulted in a categorical suspension of the adjudication of adjustment-of-status applications filed by Cuban nationals under the Cuban Adjustment Act.

55. As a result of these policies, USCIS officers have been instructed not to adjudicate adjustment-of-status applications filed by Cuban nationals who are otherwise eligible for adjustment under the Cuban Adjustment Act.

56. Plaintiffs in this action were inspected and admitted or paroled into the United States and are physically present in the United States.

57. After remaining physically present in the United States for at least one year following their admission or parole, Plaintiffs became statutorily eligible to apply for adjustment of status under the Cuban Adjustment Act.

---

[3] See PA 2025-26 at https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20251127-Discretion.pdf

[4] See PM-602-0192 at https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf.

[5] See 90 FR 59717 (December 19, 2025) at https://www.federalregister.gov/documents/2025/12/19/2025-23570/restricting-and-limiting-the-entry-of-foreign-nationals-to-protect-the-security-of-theunited-states#print.

58. Plaintiffs properly filed Form I-485 applications for adjustment of status with USCIS pursuant to the Cuban Adjustment Act.

59. Despite Plaintiffs' statutory eligibility and properly filed applications, USCIS has suspended adjudication of those applications pursuant to the policy memoranda described above.

60. The policy directives provide no definite timeline for lifting the adjudication hold and offer no individualized review of Plaintiffs' applications.

61. As a result, Plaintiffs' applications have been placed in indefinite administrative limbo, preventing USCIS from performing the adjudicatory function assigned to it by Congress under the Cuban Adjustment Act.

## COUNT I
### Administrative Procedure Act – Agency Action Unlawfully Withheld
### 5   U.S.C. §706(1)

62. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

63. The Administrative Procedure Act requires federal agencies to conclude matters presented to them within a reasonable time. 5 U.S.C. §555(b). When an agency fails to take action required by law, the APA authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). These provisions ensure that agencies carry out the responsibilities assigned to them by Congress and do not frustrate statutory programs by refusing to act.

64. Please note, Defendants may invoke Heckler v. Chaney, 470 U.S. 821 (1985) suggesting that suspension of adjudication constitutes a non-reviewable enforcement priority. However, Chaney addressed an agency's discretionary decision not to initiate enforcement proceedings against third parties — a paradigmatic exercise of prosecutorial discretion. The Supreme Court expressly limited its holding to that context, recognizing that the presumption of

unreviewability does not apply where "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," or where Congress has otherwise "provided a meaningful standard against which a court can measure the agency's exercise of discretion." Id. at 832–33.

65. The Cuban Adjustment Act provides precisely such a standard: it defines the class of eligible applicants, specifies the prerequisites for relief, and presupposes an adjudicatory process through which eligible individuals may obtain a decision. That statutory framework supplies the meaningful standard that removes this case from Chaney's scope. Second, and more fundamentally, this case does not involve a decision whether to enforce the law against anyone. Plaintiffs are not asking Defendants to prosecute, investigate, or sanction a third party. Plaintiffs are asking Defendants to perform the adjudicatory function that Congress assigned to USCIS — to receive properly filed applications and render a decision. The distinction between an agency's discretion over enforcement and its obligation to adjudicate applications submitted pursuant to a congressional mandate is well established. See Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (courts may compel discrete agency action that the agency is legally required to take); Ibarra v. Swacina, 628 F.3d 1269, 1270 (11th Cir. 2010) (courts retain jurisdiction over claims that immigration authorities have refused to act on applications). Chaney does not shield a categorical refusal to adjudicate from judicial review.

66. The Supreme Court has explained that §706(1) authorizes courts to compel agency action where a plaintiff identifies a discrete agency action that the agency is legally required to take. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). When Congress establishes a statutory process requiring agency adjudication, the agency may not refuse to

perform that adjudicatory function.

67. USCIS has a nondiscretionary duty to adjudicate adjustment-of-status applications properly filed under the immigration laws of the United States. Although the ultimate decision whether to grant adjustment of status may involve the exercise of discretion, federal courts consistently recognize that agencies do not possess discretion to refuse to adjudicate applications altogether. Rather, the agency must evaluate applications submitted under the governing statutory framework and render a decision based on the applicable law.

68. Courts have repeatedly recognized the distinction between discretion over the substantive outcome of an immigration application and the agency's obligation to process and adjudicate the application itself. The Eleventh Circuit has likewise recognized that federal courts retain jurisdiction to review claims alleging that immigration authorities have failed to exercise their discretion or have refused to act on applications presented to them. *Ibarra v. Swacina*, 628 F.3d 1269, 1270 (11th Cir. 2010).

69. In this case, Plaintiffs properly filed applications for adjustment of status pursuant to the Cuban Adjustment Act, a statute enacted by Congress to provide Cuban nationals who have been inspected and admitted or paroled into the United States and who have remained physically present in the country for at least one year with a pathway to lawful permanent residence. The statute presumes the existence of an administrative process through which eligible applicants may submit adjustment applications and have those applications adjudicated by USCIS.

70. Rather than carrying out that adjudicatory function, Defendants have imposed a categorical suspension on the adjudication of adjustment-of-status applications filed by Cuban nationals. This suspension prevents USCIS officers from evaluating Plaintiffs' applications and prevents the statutory adjudication process from moving forward.

71. By refusing to adjudicate Plaintiffs' applications, Defendants have withheld the very agency action required by the statutory framework established by Congress. The suspension of adjudication does not merely delay the statutory process; it prevents the agency from performing the discrete action—adjudication of Plaintiffs' applications—that the immigration laws require the agency to undertake.

72. Accordingly, Defendants have unlawfully withheld agency action required by law. Plaintiffs are therefore entitled to relief under 5 U.S.C. §706(1) compelling Defendants to adjudicate Plaintiffs' applications.

## COUNT II
### Administrative Procedure Act – Unreasonable Delay
### 5   U.S.C. §555(b) and §706(1)

73. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

74. The Administrative Procedure Act requires federal agencies to conclude matters presented to them within a reasonable time. 5 U.S.C. §555(b). When an agency fails to act on a matter committed to it for decision, the APA authorizes courts to compel agency action that has been unlawfully withheld or unreasonably delayed. 5 U.S.C. §706(1). These provisions reflect Congress's intent that agencies may not indefinitely postpone decisions on matters that individuals are entitled to have adjudicated under federal law.

75. Courts evaluating claims of unreasonable delay under the APA frequently apply the framework articulated in *Telecommunications Research & Action Center v. FCC ("TRAC")*, which sets forth several factors relevant to determining whether agency delay is unreasonable. 750 F.2d 70, 79–80 (D.C. Cir. 1984). *See Hidalgo Canevaro v. Wolf*, 540 F. Supp. 3d 1235 (S.D. Fla. 2021); *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278 (S.D. Fla. 2023); *Nascimento v. USCIS*, 689 F. Supp. 3d 1243 (S.D. Fla. 2023); *Santiago v. Mayorkas*, 554 F. Supp. 3d 1340

16

(N.D. Ga. 2021); *Otto v. Mayorkas*, No. 8:22-cv-1172 (M.D. Fla. 2023).

76. The TRAC factors consider, among other things, whether the agency's delay is governed by a rule of reason, the statutory scheme governing the agency's duties, the effect of delay on human welfare and the interests prejudiced by delay, and whether the delay is justified by competing agency priorities.

77. Under the TRAC framework, Defendants' suspension of adjudication constitutes unreasonable delay. The delay at issue in this case is not the result of ordinary administrative processing or the complexity of Plaintiffs' applications. Rather, the delay results from a categorical policy adopted by Defendants that halts the adjudication of adjustment-of-status applications filed by Cuban nationals. By suspending adjudication entirely, Defendants have prevented the administrative process established by Congress from operating and have effectively placed Plaintiffs' applications in indefinite limbo.

78. Congress enacted the Cuban Adjustment Act to provide eligible Cuban nationals with the opportunity to seek lawful permanent residence through an adjudicatory process administered by USCIS. By suspending adjudication indefinitely, Defendants have frustrated the statutory scheme created by Congress.

79. The interests affected by this delay are substantial. Plaintiffs seek lawful permanent residence through a statutory mechanism enacted by Congress and administered by Defendants. The suspension of adjudication prevents Plaintiffs from obtaining a decision on their applications and exposes them to continuing uncertainty and enforcement risk.

80. Here, Defendants have imposed an indefinite suspension on the adjudication of Plaintiffs' adjustment-of-status applications. This suspension is not tied to any individualized assessment of Plaintiffs' eligibility or to any normal processing timeline. Instead, it reflects a categorical

policy preventing the agency from performing the adjudicatory function assigned to it by Congress.

81. Defendants have indefinitely suspended adjudication of Plaintiffs' applications and have thereby prevented the statutory adjudication process from moving forward. Defendants' actions therefore constitute unreasonable delay in violation of 5 U.S.C. §§ 555(b) and 706(1).

## COUNT III
**Administrative Procedure Act – Arbitrary and Capricious Agency Action**
**5 U.S.C. §706(2)(A)**

82. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

83. The Administrative Procedure Act requires federal courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

84. This standard requires agencies to engage in reasoned decision-making and to articulate a satisfactory explanation for the policies they adopt. Agency action is arbitrary and capricious when the agency fails to consider the relevant statutory framework, offers an explanation that runs counter to the evidence before it, or fails to provide a reasoned explanation for its policy choices. *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983).

85. The Supreme Court has also emphasized that when agencies alter policies affecting immigration benefits or statutory programs, they must consider the serious reliance interests created by existing law and longstanding administrative practice. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 30–32 (2020)*. Where individuals and institutions have relied on the availability of statutory immigration programs, an agency must provide a reasoned explanation that addresses those reliance interests before adopting policies that

disrupt the statutory scheme.

86. Defendants' suspension of adjudication of adjustment-of-status applications filed by Cuban nationals fails to satisfy these requirements. The Cuban Adjustment Act establishes a statutory mechanism for eligible Cuban nationals to seek lawful permanent residence, and Plaintiffs invoked that mechanism by filing their applications.

87. Defendants have failed to provide a reasoned explanation for refusing to adjudicate applications submitted by Cuban nationals who are otherwise statutorily eligible for relief. Defendants have likewise failed to account for the reliance interests created by the Cuban Adjustment Act and decades of immigration practice under that statute.

88. By suspending adjudication of adjustment-of-status applications without providing a reasoned explanation, without considering the statutory framework enacted by Congress, and without accounting for the reliance interests created by the Cuban Adjustment Act, Defendants have failed to engage in the reasoned decision-making required by the Administrative Procedure Act.

89. Accordingly, Defendants' suspension of adjudication constitutes arbitrary and capricious agency action in violation of 5 U.S.C. §706(2)(A) and must be set aside.

<u>**COUNT IV**</u>
**Agency Action in Excess of Statutory Authority**
**Ultra Vires Action**

90. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

91. Federal administrative agencies possess only the authority that Congress has delegated to them through statute. The Constitution vests legislative authority in Congress, and federal agencies therefore may exercise only the powers granted to them by Congress through duly enacted laws. Courts reviewing agency action must independently determine whether an agency has

19

acted within the scope of the authority delegated by Congress. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391 (2024) (holding that courts must exercise independent judgment in determining whether an agency has acted within its statutory authority).

92. Consistent with these principles, the Supreme Court has repeatedly emphasized that agencies may not adopt policies that contradict, undermine, or effectively nullify statutory schemes enacted by Congress. Where an agency action conflicts with the structure or purpose of a statute, courts must set aside that action as exceeding the agency's authority. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125–26 (2000) (explaining that agencies may not adopt regulatory interpretations that conflict with the statutory framework established by Congress).

93. Congress enacted the Cuban Adjustment Act to create a specific statutory pathway through which eligible Cuban nationals may apply for lawful permanent residence.

94. Defendants' policy suspending the adjudication of adjustment-of-status applications filed by Cuban nationals prevents this statutory scheme from operating. By refusing to adjudicate applications submitted under the Cuban Adjustment Act, Defendants have effectively halted the administrative process through which Congress intended eligible Cuban nationals to seek lawful permanent residence.

95. This suspension of adjudication does not merely delay the statutory process; it prevents the statutory pathway created by Congress from functioning at all. Where an agency action has the effect of rendering a statutory program inoperative, that action exceeds the authority delegated to the agency by Congress.

96. Allowing Defendants to suspend adjudication indefinitely would permit the Executive Branch to effectively nullify the statutory framework established by Congress through the Cuban

20

Adjustment Act. The immigration laws do not authorize the Executive Branch to suspend the operation of a statute by refusing to adjudicate applications submitted pursuant to that statute.

97. Defendants have therefore acted in excess of their statutory authority, and their suspension of adjudication constitutes ultra vires agency action that must be set aside.

## COUNT V
### Violation of the Cuban Adjustment Act

98. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

99. Congress enacted the Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161 (1966), to establish a specific statutory pathway through which Cuban nationals who have been inspected and admitted or paroled into the United States and who have remained physically present in the country for at least one year may apply to adjust their status to that of lawful permanent resident.

100. Plaintiffs fall squarely within the class of individuals Congress intended to protect through the Cuban Adjustment Act. Plaintiffs were inspected and admitted or paroled into the United States, have remained physically present in the country for more than one year, and have properly filed applications for adjustment of status pursuant to that law.

101. Defendants' policy suspending the adjudication of adjustment-of-status applications filed by Cuban nationals prevents the statutory mechanism established by Congress from operating.

102. Courts apply the well-established principle of statutory interpretation that when a conflict exists between a specific statutory provision and a more general authority, the specific statute governs. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("the specific governs the general"). Courts likewise interpret statutes in a manner that gives effect

21

to Congress's intent and prevents general statutory provisions from nullifying specific statutory programs enacted by Congress. *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 510 (2018).

103. The Cuban Adjustment Act constitutes a targeted statutory program enacted by Congress to govern the adjustment of status of Cuban nationals who meet defined criteria. Defendants' policy suspending adjudication of adjustment applications conflicts with that statutory framework by preventing the adjudicatory process created by Congress from functioning.

104. Therefore, Defendants' actions are contrary to the Cuban Adjustment Act and therefore unlawful.

**COUNT VI**
**Violation of the Fifth Amendment – Procedural Due Process**

105. Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

106. The Fifth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. It is well established that noncitizens who are physically present within the United States are entitled to the protections of the Due Process Clause when the federal government seeks to detain them, remove them, or otherwise deprive them of significant liberty interests. The Supreme Court has repeatedly recognized that the Due Process Clause applies to noncitizens within the territorial United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (holding that the Due Process Clause applies to all persons within the United States, including noncitizens).

107. Procedural due process requires that individuals be afforded a meaningful opportunity to present their claims before the government imposes severe deprivations of liberty. In determining what process is constitutionally required, courts apply the balancing framework articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which considers the private

interests affected by government action, the risk of erroneous deprivation of those interests through the procedures used, and the governmental interests asserted in support of the challenged policy. The Supreme Court has specifically recognized that these procedural protections apply in the immigration context, where the consequences of government action may include detention and removal from the United States. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (recognizing that noncitizens physically present in the United States are entitled to due process protections in immigration proceedings). The Eleventh Circuit has likewise held that noncitizens within the United States are entitled to constitutional protections under the Fifth Amendment. *Jean v. Nelson*, 727 F.2d 957, 972 (11th Cir. 1984).

108.    The private interests implicated by Defendants' policy are substantial. Deportation has long been recognized as a severe deprivation that may result in permanent separation from family, loss of employment, and exile from the country in which individuals have established their lives. Bridges v. Wixon, 326 U.S. 135, 154 (1945). Plaintiffs are physically present within the United States and face the risk of detention or removal before their statutory eligibility for adjustment of status is ever adjudicated.

109.    Congress enacted the Cuban Adjustment Act to provide a statutory mechanism through which eligible Cuban nationals may seek lawful permanent residence, and Plaintiffs have properly invoked that process by filing their adjustment applications.

110.    Defendants' categorical suspension of adjudication prevents Plaintiffs from accessing the statutory process created by Congress to determine their eligibility for lawful permanent residence.

111.    At the same time, the Department of Homeland Security continues to initiate and pursue removal proceedings against similarly situated individuals. Immigration Judges frequently lack

jurisdiction to adjudicate adjustment-of-status applications where jurisdiction lies exclusively with USCIS. As a result, individuals who are prima facie eligible for adjustment under the Cuban Adjustment Act may be forced to proceed through removal proceedings while the only agency authorized to adjudicate their adjustment applications refuses to act.

112.    This creates a procedural framework in which individuals who are statutorily eligible for adjustment of status may nevertheless face detention or removal before the government ever evaluates their eligibility for relief. Such a system carries a substantial risk of erroneous deprivation of liberty interests. By suspending the adjudication process while allowing removal proceedings to continue, Defendants have created a system in which the statutory pathway enacted by Congress becomes functionally unavailable.

113.    The Due Process Clause requires more. Where Congress has created a statutory mechanism through which individuals may seek lawful status, the Constitution requires that those individuals be afforded a meaningful opportunity to pursue that statutory process before the government imposes the severe consequences of removal. Defendants' policy fails to provide such an opportunity. By suspending adjudication indefinitely while immigration enforcement continues, Defendants have deprived Plaintiffs of the meaningful procedural protections required by the Fifth Amendment.

114.    Accordingly, Defendants' suspension of adjudication of adjustment-of-status applications filed by Cuban nationals violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

## COUNT VII
### Misapplication of 8 U.S.C. §1182(f)

115.    Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

116.    The policies challenged in this action are based on Presidential Proclamations issued

pursuant to 8 U.S.C. §1182(f), which authorizes the President to suspend the entry of aliens into the United States when their entry would be detrimental to the interests of the United States.

117.   By its plain terms, §1182(f) regulates the admission or entry of foreign nationals seeking to enter the United States from abroad. The statute authorizes the President to restrict entry into the United States but does not authorize the Executive Branch to suspend the adjudication of immigration benefits for individuals who are already physically present within the United States.

118.   Plaintiffs in this action are not seeking entry into the United States. Each Plaintiff was inspected and admitted or paroled into the United States, and therefore lawfully entered the country pursuant to the immigration laws administered by the Department of Homeland Security.

119.   As individuals who were admitted or paroled into the United States, Plaintiffs are lawfully present within the United States and subject to the domestic immigration laws governing noncitizens physically present in the country.

120.   After remaining physically present in the United States for at least one year following their admission or parole, Plaintiffs became statutorily eligible to apply for adjustment of status pursuant to the Cuban Adjustment Act.

121.   The Cuban Adjustment Act establishes a statutory mechanism through which Cuban nationals who have been inspected and admitted or paroled into the United States and who are physically present in the United States for at least one year may apply to adjust their status to that of lawful permanent resident.

122.   Adjustment of status under the Cuban Adjustment Act is therefore a domestic adjudicatory

process applicable only to individuals who are already physically present in the United States. The statute does not apply to individuals outside the United States seeking entry.

123.   Because Plaintiffs are already present in the United States and seek adjudication of applications filed pursuant to this statutory framework, the entry restrictions imposed under §1182(f) do not govern the adjudication of Plaintiffs' adjustment-of-status applications.

124.   Nevertheless, Defendants have relied on entry-based authorities to suspend the adjudication of Plaintiffs' applications. This policy effectively transforms an entry restriction into a suspension of domestic immigration benefits for individuals already lawfully present in the United States.

125.   Nothing in §1182(f) authorizes the Executive Branch to halt the adjudication of adjustment-of-status applications filed by noncitizens who were admitted or paroled into the United States and who are physically present in the country.

126.   Courts have repeatedly recognized that executive authority under §1182(f) must operate within the statutory framework enacted by Congress and may not be used to override or nullify congressionally created immigration procedures. Consistent with this principle, courts have held that §1182(f) cannot be invoked to replace or circumvent statutory immigration procedures established by Congress. In *Refugee and Immigrant Center for Education and Legal Services v. Noem*, the court concluded that §1182(f) did not authorize the Executive Branch to replace the removal procedures enacted by Congress with extra-statutory mechanisms and emphasized that the Executive may not rely on §1182(f) to circumvent the statutory framework governing immigration proceedings. 793 F. Supp. 3d 19, 42–43 (D.D.C. 2024).

127.   Similarly, in *Pacito v. Trump*, the court explained that although the President possesses

26

broad authority under §1182(f), that authority does not permit the Executive Branch to abandon the statutory duties imposed by Congress under the Refugee Act and related immigration statutes. 797 F. Supp. 3d 1227, 1241 (D.D.C. 2025).

128.    Courts within the Eleventh Circuit likewise recognize that executive authority in the immigration context must operate within the statutory limits established by Congress and remains subject to judicial review to ensure compliance with those limits. See *Jean v. Nelson*, 727 F.2d 957, 972 (11th Cir. 1984).

129.    This principle reflects the fundamental rule that federal agencies may exercise only the authority delegated to them by Congress. Courts must independently determine whether an agency has acted within the scope of that delegated authority. See *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391 (2024).

130.    Because Plaintiffs were admitted or paroled into the United States and are physically present within the country, and because the Cuban Adjustment Act establishes a statutory process governing the adjudication of adjustment applications for such individuals, Defendants may not invoke §1182(f) to suspend the adjudication of Plaintiffs' applications.

131.    Defendants' policy therefore exceeds the authority granted by Congress and is unlawful.

<u>**COUNT VIII**</u>
**Mandamus, 28 U.S.C. §1361**

132.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as though fully set forth herein.

133.    The Mandamus Act grants federal district courts jurisdiction over actions seeking to compel an officer or employee of the United States to perform a duty owed to the plaintiff. 28 U.S.C. §1361. Mandamus relief is appropriate where the plaintiff demonstrates (1) a clear right to the relief requested, (2) a clear and nondiscretionary duty on the part of the defendant to

27

perform the act in question, and (3) the absence of any other adequate remedy. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

134. All three elements necessary for mandamus relief are satisfied in this case.

135. First, Plaintiffs possess a clear legal right to have their applications for adjustment of status adjudicated in accordance with the immigration laws enacted by Congress. Plaintiffs have satisfied the statutory prerequisites established by Congress and have properly filed their applications for adjustment of status pursuant to the Cuban Adjustment Act.

136. Second, Defendants possess a clear, nondiscretionary duty to adjudicate Plaintiffs' applications. Although the ultimate decision whether to grant adjustment of status may involve the exercise of agency discretion, federal courts consistently recognize that immigration authorities do not possess discretion to refuse to adjudicate applications altogether. Courts distinguish between discretion over the outcome of an application and the agency's obligation to reach a decision on the application itself. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (recognizing that courts may compel discrete agency action that the agency is legally required to take). Once an application has been properly filed under the immigration laws, the responsible agency must review the application and render a decision. Defendants' categorical suspension of adjudication prevents USCIS officers from exercising the authority delegated to them by Congress and effectively eliminates the adjudicatory process altogether.

137. Third, Plaintiffs lack any adequate alternative remedy. Without judicial intervention, Plaintiffs' applications may remain indefinitely unadjudicated while removal proceedings continue against similarly situated individuals. Immigration Judges frequently lack jurisdiction to adjudicate adjustment-of-status applications where jurisdiction lies exclusively with USCIS. As a result, individuals who are prima facie eligible for adjustment under the Cuban

28

Adjustment Act may face detention or removal before the agency ever adjudicates the application that Congress authorized them to file. This adjudicatory vacuum leaves Plaintiffs without any meaningful mechanism through which to obtain the relief Congress made available.

138.  Mandamus exists precisely to remedy this type of administrative paralysis. Where a federal agency refuses to perform a duty required by law and no other adequate remedy exists, federal courts possess authority to compel the agency to act. Plaintiffs do not seek an order requiring Defendants to grant adjustment of status. Rather, Plaintiffs seek only an order requiring Defendants to perform their nondiscretionary duty to adjudicate Plaintiffs' pending applications in accordance with federal law.

139.  Accordingly, Plaintiffs are entitled to mandamus relief requiring Defendants to adjudicate Plaintiffs' applications without further unlawful delay.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court enter an order:

a) accepting jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1361 and 5 U.S.C. §§ 702 and 706;

b) declaring that Defendants' suspension, delay, or refusal to adjudicate Plaintiffs' applications for adjustment of status submitted pursuant to the Cuban Adjustment Act is unlawful under the Administrative Procedure Act, conflicts with the Cuban Adjustment Act, exceeds Defendants' statutory authority, and violates the Fifth Amendment;

c) setting aside Policy Alert PA-2025-26, Policy Memorandum PM-602-0192, and Policy Memorandum PM-602-0194 pursuant to 5 U.S.C. § 706;

d) compelling Defendants to resume and complete the adjudication of Plaintiffs' adjustment-of-status applications within a reasonable period of time and in accordance with the governing statutes, regulations, and procedures applicable to such applications;

e) issuing a writ of mandamus pursuant to 28 U.S.C. § 1361 compelling Defendants to perform their nondiscretionary duty to adjudicate Plaintiffs' properly filed adjustment-of-status applications; and

f) granting such other and further relief at law or in equity as the Court deems just and proper.

Dated: March 9, 2026

Respectfully submitted,

/s/ Arno Lemus
Arno Javier Lemus
FL Bar No.: 0103075
Attorney E-mail: arno@lemus.org
Lemus Law Group
1024 NW 102 PL
Miami, FL 33172
Telephone: (786) 816-2795
Attorney for Plaintiffs