UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |
|---|---|
| E.M.P.C., *et al.*,<br><br>      *Plaintiffs*,<br><br>v.<br><br>Kristi NOEM, Secretary of the Department of Homeland Security, in her official capacity, *et al.*,<br><br>      *Defendants*. | Case No. 1:26-cv-21565-DSL |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND MEMORANDUM OF LAW IN SUPPORT**

**INTRODUCTION**

Plaintiffs E.M.P.C., *et al.*, move this Court pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1)(A), (b)(2), and (b)(3) to certify this action as a class action. Plaintiffs seek to represent all Cuban nationals who have properly filed Form I-485 applications for adjustment of status pursuant to the Cuban Adjustment Act ("CAA"), Pub. L. No. 89-732, 80 Stat. 1161 (1966), and whose applications are currently suspended under Defendants' adjudication hold imposed through Policy Alert PA-2025-26, Policy Memorandum PM-602-0192, and Policy Memorandum PM-602-0194 (collectively, the "Policy Directives"). No administrative exhaustion is required because Defendants have prescribed no administrative appeal mechanism for the adjudication hold, and the APA does not require exhaustion of non-existent remedies. *Darby v. Cisneros,* 509 U.S. 137 (1993).

1

Congress enacted the Cuban Adjustment Act in 1966 to provide Cuban nationals who had fled Communist rule a specific and preferential pathway to lawful permanent residence inside the United States. H.R. Rep. No. 89-1978, at 2 (1966). The statute was enacted as remedial legislation designed to aid Cuban refugees' resettlement and was intended from its inception to be construed broadly in favor of eligible applicants. *Matter of Riva,* 12 I&N Dec. 56, 58 (Reg. Comm'r 1967). For nearly six decades, eligible Cuban nationals have filed I-485 applications and received adjudications from USCIS. Defendants have now brought that process to a halt — categorically, indefinitely, and without statutory authority.

The legal questions this case presents are identical for every member of the proposed class: whether Defendants' Policy Directives violate the Administrative Procedure Act; whether they exceed Defendants' statutory authority; whether they conflict with the Cuban Adjustment Act; and whether they deprive class members of due process. Each question will be resolved by a single legal analysis applied to a single government policy. No individualized inquiry is required. Class treatment is the natural and efficient vehicle for resolving this dispute.

As set forth in the accompanying Declaration of Arno Javier Lemus, counsel has conducted extensive investigation into the claims asserted herein, is thoroughly familiar with the governing statutory and constitutional framework, and is qualified and committed to representing the proposed class. The proposed class satisfies all requirements of Rule 23(a) and qualifies for certification under Rule 23(b)(1)(A), (b)(2), and (b)(3). For the reasons set forth below, the motion should be granted.

**PROPOSED CLASS DEFINITION**

Plaintiffs propose the following class definition:

> All Cuban nationals who (1) were inspected and admitted or paroled into the United States; (2) have remained physically present in the United States for at least one year following their admission or parole; (3) have properly filed a Form I-485 Application to Register Permanent Residence or Adjust Status pursuant to the Cuban Adjustment Act with United States Citizenship and Immigration Services; and (4) whose I-485 applications are currently subject to the adjudication hold imposed by Policy Alert PA-2025-26 (November 27, 2025), Policy Memorandum PM-602-0192 (December 2, 2025), and/or Policy Memorandum PM-602-0194 (January 1, 2026).
>
> Excluded from the class are: Defendants, their officers, agents, and employees; any member of the federal judiciary assigned to this matter; and any person whose Form I-485 application has been finally adjudicated and denied on the merits prior to the date of class certification.

**BACKGROUND**

**A. The Cuban Adjustment Act: Remedial Legislation With Deep Roots.**

Congress enacted the Cuban Adjustment Act in 1966 against a specific historical backdrop. Western Hemisphere nationals — including Cubans — were then barred from adjusting their status to permanent resident while inside the United States. H.R. Rep. No. 89-1978, at 2 (1966). Cuban nationals who had fled Communist rule following the 1959 revolution had been paroled into the United States in large numbers since 1961, but had no available legal pathway to regularize their status without departing the country. *Id.*, at 3–4. Congress passed the CAA specifically to remedy this gap — to give Cuban refugees "a preferential procedure for seeking permanent residency" from within the United States. Sullivan, Cong. Research Serv., Cuba-U.S. Relations, at 3 (Dec. 14, 1999).

From the moment of its enactment, courts and administrative tribunals recognized the CAA as remedial legislation requiring broad construction. The agency itself stated in 1967 that "this is remedial legislation, such [that] a strict interpretation is to be avoided if it thwarts the congressional

3

intent." *Matter of Riva,* 12 I&N Dec. 56, 58 (Reg. Comm'r 1967). The statute's purpose was "to provide a ready means to permit certain Cuban refugees in the United States to adjust to permanent resident status," thereby enhancing their opportunity to work and reducing governmental expenditure on their behalf. *Matter of Mesa,* 12 I&N Dec. 432, 434–35 (Dep. Assoc. Comm'r 1967).

The statute has remained in force without interruption. Section 606(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 expressly preserved the CAA until a presidential determination of democratic governance in Cuba — a determination that has never been made. 110 Stat. 3009-695. Plaintiffs and the members of the proposed class are the direct beneficiaries of this statutory program.

### B. Defendants' Adjudication Hold and Its Legal Infirmity.

On June 4, 2025, the President issued Proclamation 10949 pursuant to 8 U.S.C. § 1182(f), restricting the entry of certain foreign nationals into the United States, including nationals of Cuba. Section 1182(f) authorizes the President to suspend the entry of foreign nationals when their entry would be detrimental to national interests. By its plain terms, the statute governs individuals outside the United States who are seeking entry — not individuals who are already physically present within the country following lawful admission or parole.

Notwithstanding that textual limitation, USCIS issued three successive Policy Directives extending the logic of the entry proclamation into the domestic adjudication context. Policy Alert PA-2025-26 (November 27, 2025) directed adjudicators to consider country-specific factors from Proclamation 10949 when adjudicating discretionary benefits. Policy Memorandum PM-602-0192 (December 2, 2025) placed a categorical hold on all pending benefit applications filed by nationals of listed countries, including Cuba. Policy Memorandum PM-602-0194 (January 1, 2026)

4

expanded the country list. None of the Policy Directives provides a timeline for resumption or any mechanism for individualized review.

Federal courts have consistently held that § 1182(f) cannot be stretched to override or circumvent statutory immigration procedures enacted by Congress. In *RAICES v. Noem,* 793 F. Supp. 3d 19, 42–43 (D.D.C. 2024), the court held that § 1182(f) does not authorize the Executive Branch to replace congressionally enacted immigration procedures with extra-statutory mechanisms. In *Pacito v. Trump,* 797 F. Supp. 3d 1227, 1241 (D.D.C. 2025), the court held that broad presidential authority under § 1182(f) does not permit abandonment of statutory duties Congress has imposed. Defendants' Policy Directives suffer from the same legal defect.

Each of the eighteen named Plaintiffs is a Cuban national who was inspected and admitted or paroled into the United States, remained physically present for at least one year, filed a Form I-485 pursuant to the CAA, and received a USCIS receipt notice confirming acceptance. Each Plaintiff's application is now frozen under the same categorical Policy Directives that apply identically to every member of the proposed class.

## LEGAL STANDARD FOR CLASS CERTIFICATION

A party seeking class certification must satisfy the four prerequisites of Rule 23(a) — numerosity, commonality, typicality, and adequacy of representation — and must show the proposed class falls within at least one subsection of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 345 (2011). The district court must conduct a rigorous analysis, but that analysis is not a merits inquiry. *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,* 568 U.S. 455, 465–66 (2013). The question at certification is whether Rule 23's requirements are met, not whether Plaintiffs will ultimately prevail. *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178 (1974).

Rule 23 is construed liberally in suits challenging uniform government policies applied categorically to a defined class. The Eleventh Circuit has confirmed that this Court has jurisdiction to review USCIS adjudication decisions under the Cuban Adjustment Act without the limitation of the INA's general discretionary bar. *Perez v. USCIS,* 774 F.3d 960, 967–68 (11th Cir. 2014). Challenges to categorical immigration policies present precisely the common legal questions that class treatment is designed to resolve. *Ibrahim v. Acosta,* 326 F.R.D. 696, 699 (S.D. Fla. 2018); *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1266 (11th Cir. 2009).

## ARGUMENT

### I. THE PROPOSED CLASS SATISFIES ALL REQUIREMENTS OF RULE 23(a).

#### A. Numerosity — Rule 23(a)(1).

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "While there is no fixed rule, generally a class size less than twenty-one is inadequate, while a class size of more than forty is adequate." *Ibrahim v. Acosta,* 326 F.R.D. 696, 699 (S.D. Fla. 2018) (citations omitted). Where the precise number of class members lies within the defendant's exclusive possession and control, courts apply a relaxed standard and may rely on reasonable inference. *Kilgo v. Bowman Transportation, Inc.,* 789 F.2d 859, 878 (11th Cir. 1986). The proposed class comfortably satisfies numerosity. The Policy Directives apply categorically to all Cuban nationals with pending I-485 applications. Based on USCIS processing volumes and the significant number of Cuban nationals who entered the United States through parole and other admissions programs in recent years, the class consists of hundreds of individuals whose applications have been frozen under the same policy. The exact number lies within Defendants' exclusive possession and will be confirmed through discovery, but the class plainly exceeds forty

members many times over. Geographic dispersion of class members — many of whom reside throughout South Florida and other parts of the country — further supports impracticability of joinder. *Kilgo,* 789 F.2d at 878.

### B. Ascertainability.

Although the Eleventh Circuit has not adopted ascertainability as a formal Rule 23 prerequisite, courts in this district have recognized that a proposed class must be defined by objective, administratively feasible criteria. *Karhu v. Vital Pharmaceuticals, Inc.,* 621 F. App'x 945, 946 (11th Cir. 2015). The proposed class satisfies that standard. Each element of the class definition is verifiable by reference to official government records maintained by USCIS and the Department of Homeland Security: Cuban nationality is confirmed by passport; lawful admission or parole is confirmed by the I-94 arrival record; physical presence for one year is confirmed by that same record and corroborating documentation; filing of a Form I-485 is confirmed by the USCIS receipt notice; and application of the adjudication hold is confirmed by the Policy Directives themselves, which apply categorically to all pending I-485 applications filed by Cuban nationals. No subjective inquiry is required. Class membership can be identified entirely from USCIS's own administrative records, which are within Defendants' possession and subject to discovery. The class definition is sufficiently definite and administratively feasible.

### C. Commonality — Rule 23(a)(2).

Rule 23(a)(2) requires questions of law or fact common to the class. Commonality is satisfied when class members share a common contention whose truth or falsity will resolve an issue central to the validity of each claim "in one stroke." *Wal-Mart,* 564 U.S. at 350. Even a single common question suffices. *Id.*

This case presents at least six common legal questions, each of which will resolve the claims of every class member simultaneously:

1. Whether Defendants' categorical suspension of CAA adjudications constitutes agency action unlawfully withheld in violation of 5 U.S.C. § 706(1);

2. Whether the suspension constitutes unreasonable delay under 5 U.S.C. §§ 555(b) and 706(1), evaluated under the *TRAC* framework, *Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 79–80 (D.C. Cir. 1984);

3. Whether the suspension is arbitrary and capricious under 5 U.S.C. § 706(2)(A), including whether Defendants failed to account for the reliance interests created by nearly six decades of practice under the CAA, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 30–32 (2020);

4. Whether Defendants exceeded their statutory authority by invoking 8 U.S.C. § 1182(f) — an entry-restriction statute — to suspend domestic benefit adjudications for individuals already physically present in the United States, *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 391 (2024);

5. Whether the suspension conflicts with and effectively nullifies the Cuban Adjustment Act under the canon that specific statutes govern general authority, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, 645 (2012); and

6. Whether the suspension violates the Due Process Clause of the Fifth Amendment by creating a procedural framework in which class members face detention and removal before USCIS ever evaluates their statutory eligibility, *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

Each question arises from the identical Policy Directives applied uniformly to every class member. No individualized inquiry is necessary. The answers will resolve the liability of Defendants as to the entire class simultaneously.

**The TRAC Factors Confirm That Unreasonable Delay Is a Common Legal Question.**

The unreasonable delay question — common question two above — is resolved by applying the six-factor framework established in *Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 79–80 (D.C. Cir. 1984) (*TRAC*), regularly applied in this district. Each factor confirms that the adjudication hold is unreasonable as a class-wide matter.

**First,** the rule-of-reason factor weighs against Defendants: the Policy Directives impose no timeline for resumption and provide no mechanism for individualized review, rendering the delay open-ended and without rational justification. **Second,** Congress enacted the Cuban Adjustment Act to provide a specific and expeditious pathway to permanent residence for Cuban refugees; an indefinite suspension of adjudications directly contravenes that legislative timetable and purpose. **Third,** delay causes concrete harm: class members cannot obtain work authorization incident to adjustment, cannot travel internationally, and remain in a legally precarious status that exposes them to detention and removal. **Fourth,** no competing agency interest or administrative queue justifies the categorical freeze; the hold is not the product of resource constraints but of a policy directive that extends entry-restriction authority beyond its statutory domain. **Fifth,** the interests of human health and welfare weigh heavily in favor of class members who have waited years to regularize their status and who face concrete legal jeopardy from further delay. **Sixth,** unreasonable delay claims under § 706(1) are committed to judicial review under the APA and are not shielded by the *Chaney* presumption of unreview ability.

Because each *TRAC* factor is evaluated against the same Policy Directives applied identically to every class member, the unreasonable delay question is — like all other common questions — resolved in one stroke.

Defendants cannot invoke *Heckler v. Chaney,* 470 U.S. 821 (1985), to defeat commonality by arguing that these questions are unreviewable enforcement priorities. *Chaney* addressed a paradigmatic exercise of prosecutorial discretion — an agency's decision whether to initiate enforcement proceedings against third parties. The Supreme Court expressly limited its holding, recognizing that the presumption of unreviewability does not apply where "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers" or where Congress has "provided a meaningful standard against which a court can measure the agency's exercise of discretion." *Id.* at 832–33. The Cuban Adjustment Act provides precisely that standard. Moreover, this case does not involve a decision whether to enforce the law against anyone — it involves a refusal to perform the adjudicatory function Congress assigned to USCIS. The distinction between prosecutorial discretion and the nondiscretionary duty to adjudicate is well established. *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 64 (2004); *Ibarra v. Swacina,* 628 F.3d 1269, 1270 (11th Cir. 2010). *Chaney* does not shield these common legal questions from class-wide adjudication.

### D.  Typicality — Rule 23(a)(3).

Rule 23(a)(3) requires that the claims of the representative parties be typical of the class. Typicality is satisfied where the named plaintiffs' claims arise from the same course of conduct and rest on the same legal theory as those of the class. *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001). Differences in specific individual facts do not defeat typicality when the legal theory is uniform. *Id.*

Each of the eighteen named Plaintiffs is a Cuban national who was inspected and admitted or paroled into the United States, remained physically present for at least one year, filed a Form I-485 pursuant to the CAA, received a USCIS receipt notice, and has had their application suspended under the Policy Directives. Their claims are legally identical to those of every other class member. The same theories — APA violations, statutory conflict, ultra vires action, and due process deprivation — apply with equal force to every individual whose application has been frozen. No named Plaintiff asserts claims unique to their individual circumstances, and no defense applicable only to a named Plaintiff could distract from the common legal issues.

### E.  Adequacy of Representation — Rule 23(a)(4) and Rule 23(g).

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the class. The inquiry has two components: (1) whether any conflict exists between the named plaintiffs and the class, and (2) whether class counsel is qualified to conduct the litigation. *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1323 (11th Cir. 2008).

No conflict exists. Every class member seeks the same relief — an order requiring Defendants to resume and complete adjudication of their CAA applications. The named Plaintiffs have demonstrated their commitment to this litigation by voluntarily participating in a federal lawsuit, accepting pseudonymous filing, and cooperating with counsel throughout.

Proposed class counsel, Arno Javier Lemus of Lemus Law Group, is qualified to represent the proposed class. As detailed in the accompanying Declaration of Arno Javier Lemus, counsel identified and investigated the claims in this action, analyzed the three Policy Directives and their relationship to Proclamation 10949, developed the § 1182(f) misapplication theory, and reviewed the immigration files and supporting documentation for all eighteen named Plaintiffs. Counsel has

11

demonstrated thorough knowledge of the applicable statutory, regulatory, and constitutional framework and is committed to vigorously prosecuting this matter on behalf of all class members. Proposed class counsel also satisfies each requirement of Federal Rule of Civil Procedure 23(g)(1)(A).

*First,* counsel identified and investigated the potential claims in this action, including reviewing the three Policy Directives, analyzing Presidential Proclamation 10949, and reviewing the immigration files of all eighteen named Plaintiffs. Fed. R. Civ. P. 23(g)(1)(A)(i). *Second,* counsel is experienced in federal immigration litigation and is thoroughly familiar with the Cuban Adjustment Act, the Administrative Procedure Act, the limits of § 1182(f) authority, and the constitutional standards applicable to this action. Counsel served as Managing Attorney at Youth Co-Op, Inc., a nonprofit immigration legal services organization, for approximately ten years, supervising the representation of approximately 2,000 immigration clients, the substantial majority of whom were Cuban nationals with Cuban Adjustment Act matters. That concentrated, decade-long experience with the precise statutory scheme at issue here — including USCIS adjudication practice, the eligibility criteria of the CAA, and the regulatory framework governing Cuban parolees and admittees — directly informs counsel's expertise in this action. Counsel also has direct federal court litigation experience, having filed and prosecuted multiple habeas corpus petitions and mandamus actions in federal district courts, including this district, challenging unlawful immigration detention and compelling agency action on delayed adjudications. Counsel further has a pending class action in this district, Bada Pando v. Noem, Case No. 1:25-cv-25268 (S.D. Fla.) (filed Nov. 12, 2025), involving a proposed class of over 900 members and arising under the same statutory framework, demonstrating familiarity with class counsel obligations before this Court. Fed. R. Civ. P. 23(g)(1)(A)(ii).

***Third,*** counsel has committed the resources of Lemus Law Group to vigorously prosecute this action through final judgment and any appellate proceedings, including conducting class-wide discovery and managing class notice. Counsel's decade of managing a high-volume nonprofit immigration practice and ongoing management of a proposed 900-member class action in this district demonstrate the organizational capacity and resources necessary to fulfill these obligations. Lemus Law Group is backed by three attorneys and twenty paralegal/clerical support staff. The firm will channel all the required human capital towards the management of the present action.

Fed. R. Civ. P. 23(g)(1)(A)(iii). ***Fourth,*** no other counsel has appeared in this action, and no competing litigation presents a coordination concern. Fed. R. Civ. P. 23(g)(1)(A)(iv). The accompanying Declaration of Arno Javier Lemus further details counsel's qualifications and commitment to the class.

## II.     THE PROPOSED CLASS INDEPENDENTLY SATISFIES RULE 23(b).

In addition to satisfying Rule 23(a), the proposed class qualifies for certification under Rule 23(b)(1)(A), Rule 23(b)(2), and Rule 23(b)(3). Plaintiffs seek certification under all three in the alternative.

### A.  Rule 23(b)(1)(A) — Risk of Inconsistent Adjudications.

Rule 23(b)(1)(A) authorizes certification where separate actions would create a risk of inconsistent adjudications establishing incompatible standards of conduct for the opposing party. Fed. R. Civ. P. 23(b)(1)(A). This provision is specifically designed for challenges to uniform government policies.

If each class member were required to file an individual action, different district courts could reach conflicting conclusions about the lawfulness of the same Policy Directives. One court might

order USCIS to adjudicate Cuban nationals' applications while another upheld the identical policy. USCIS would then face irreconcilable judicial commands regarding the same categorical policy applied to similarly situated individuals. Class certification produces a single authoritative ruling and eliminates that risk entirely.

### B. Rule 23(b)(2) — Uniform Policy Warranting Injunctive Relief.

Rule 23(b)(2) authorizes certification where the opposing party has acted or refused to act on grounds that apply generally to the class, making final injunctive or declaratory relief appropriate as to the class as a whole. Fed. R. Civ. P. 23(b)(2). This subsection was designed for civil rights and government policy litigation and is most naturally suited to cases where the challenged conduct is categorical and the remedy operates uniformly. *Wal-Mart,* 564 U.S. at 360.

This is a textbook Rule 23(b)(2) action. The Policy Directives apply identically to every Cuban national with a pending I-485 application. They make no individualized assessment; they operate as a blanket categorical hold based solely on the applicant's Cuban nationality. The relief Plaintiffs seek — a declaratory judgment that the Policy Directives are unlawful and an injunction compelling Defendants to resume adjudication — is entirely uniform in operation. An injunction ordering USCIS to process Cuban nationals' I-485 applications would apply identically to every class member without any further case-by-case determination. Rule 23(b)(2) certification is the appropriate vehicle.

### C. Rule 23(b)(3) — Predominance and Superiority.

In the alternative, the proposed class satisfies Rule 23(b)(3), which requires that common questions predominate over individual ones and that a class action be superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3).

Predominance is satisfied when common questions are more substantial than individual ones. *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Here, the common questions — the legality of the Policy Directives under the APA, the limits of § 1182(f) authority, the interaction between Proclamation 10949 and the CAA, and the constitutional requirements of due process — are purely legal questions resolved by the same analysis applied to the same governmental conduct. They are the only questions in this case. There are no meaningful individual factual questions; each class member was admitted or paroled, waited one year, filed a Form I-485, and received a receipt notice.

Superiority is equally clear. Requiring hundreds of Cuban nationals — many of whom lack English proficiency, legal sophistication, or financial resources — to individually litigate identical claims would waste judicial resources, risk inconsistent outcomes, and deny practical access to judicial review for class members who could not practicably bring individual suits. Manageability presents no unusual obstacle. The claims in this action are purely legal — they turn entirely on the lawfulness of a uniform government policy and require no individualized factual inquiry. There are no damages calculations, no individualized causation questions, and no variations in class members' legal positions that would complicate administration. The only manageability consideration specific to this action is class notice. Given that named Plaintiffs proceed pseudonymously and many class members may have similar concerns about public identification, the Court may direct that class notice be implemented through indirect means — including distribution through immigration attorneys practicing in the South Florida community, notice to recognized Cuban-American and immigrant-advocacy organizations, and publication in Spanish-language media outlets serving the South Florida Cuban diaspora — rather than by direct mail to named individuals. Plaintiffs will submit a detailed class notice plan within thirty days of

any certification order, as provided in the proposed order. This approach is consistent with courts' broad discretion to fashion notice procedures appropriate to the circumstances of the class. *Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir. 1975).

The four Rule 23(b)(3) factors all support certification: class members have no particular interest in controlling individual prosecutions; no competing litigation is pending; concentration in this district is appropriate given that most class members reside in South Florida; and this case presents no unusual management challenges, as the claims are purely legal and turn entirely on a common government policy.

## CONCLUSION

The proposed class satisfies every requirement of Rule 23(a) and independently qualifies for certification under Rule 23(b)(1)(A), (b)(2), and (b)(3). The named Plaintiffs and all class members share identical legal claims arising from the same categorical Policy Directives applied uniformly and without individualized review. Class treatment will permit this Court to resolve the legality of Defendants' adjudication hold in a single proceeding — efficiently, consistently, and in a manner that ensures the hundreds of Cuban nationals affected receive the judicial review Congress intended them to have.

For the foregoing reasons, Plaintiffs respectfully request that this Court:

1. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1)(A), (b)(2), and (b)(3);
2. Appoint Plaintiffs E.M.P.C., *et al.*, as class representatives; and
3. Appoint Arno Javier Lemus of Lemus Law Group as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

Dated: March 11, 2026                                          Respectfully submitted,

/s/ Arno Lemus
Arno Javier Lemus
FL Bar No.: 0103075
Attorney E-mail: lemusarno@gmail.com
Lemus Law Group
1024 NW 102 PL
Miami, FL 33172
Telephone: (786) 816-2795
Attorney for Plaintiffs

* * *

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2026, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Arno Javier Lemus
Arno Javier Lemus

* * *

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a)(3), Plaintiffs' counsel certifies that counsel has not yet had an opportunity to confer with counsel for Defendants because Defendants have not yet appeared and no such counsel has been identified at the time of filing. Plaintiffs will confer with Defendants' counsel promptly upon their appearance.

/s/ Arno Javier Lemus
Arno Javier Lemus