**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-cv-21565-LEIBOWITZ/HERNANDEZ

E.M.P.C., et al.,

*Plaintiffs*,

v.

MARKWAYNE MULLIN, Secretary of the
Department of Homeland Security, in his
official capacity, et al.,

*Defendants*.

_____/

**PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND**
**MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs E.M.P.C., et al., respectfully move this Court pursuant to Federal Rule of Civil

Procedure 23(a) and 23(b)(1)(A), (b)(2), and (b)(3) to certify this action as a class action. This

renewed motion supersedes Plaintiffs' original Motion to Certify Class (D.E. 5), recommended

denied as moot (D.E. 69), and addresses the operative Second Amended and Supplemental Class

Action Complaint (the "SAC," D.E. 63) and its narrowed class definition.

Congress enacted the Cuban Adjustment Act ("CAA") to give paroled Cuban nationals a

preferential statutory pathway to lawful permanent residence, and for nearly six decades U.S.

Citizenship and Immigration Services ("USCIS") adjudicated their Form I-485 applications. Pub.

L. No. 89-732, 80 Stat. 1161 (1966). Two policy memoranda, PM-602-0192 (December 2, 2025)

and PM-602-0194 (January 1, 2026) (the "Hold Directives"), have halted that process

categorically, with no timeline for resumption and no individualized review.

1

The SAC narrows the proposed class to arriving aliens: Cuban nationals paroled under INA § 212(d)(5) whose pending CAA-based I-485 applications are frozen under the Hold Directives. USCIS therefore has exclusive jurisdiction over every member's application, and no divergence of interests exists. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(ii). The SAC does not challenge PA-2025-26 and PM-602-0199 (the "Discretion Directives"), eliminating the conflict concern identified in prior briefing.

The legal questions are identical for every class member: whether the Hold Directives are agency action unlawfully withheld, arbitrary and capricious, in excess of statutory authority, in conflict with the CAA, and violative of Fifth Amendment due process. Each will be resolved by one legal analysis of one policy, without individualized inquiry. The proposed class satisfies Rule 23(a) and qualifies independently under Rule 23(b)(1)(A), (b)(2), and (b)(3).

## SUMMARY OF ARGUMENT

Eighteen named Plaintiffs represent Cuban arriving aliens paroled under INA § 212(d)(5) whose properly filed CAA-based I-485 applications are frozen by memoranda that draw no distinctions, permit no individualized review, and impose no timeline. Whether those directives are lawful will be answered identically for every member.

The class numbers in the thousands; every member shares the identical legal posture; the named Plaintiffs' claims are legally identical to the class's; and no intra-class conflict exists. Rule 23(b)(2) is the most natural vehicle: the Hold Directives are a categorical refusal to act "on grounds that apply generally to the class," and one injunction would afford every member complete relief. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Certification is independently warranted under Rule 23(b)(1)(A), given the existing patchwork of rulings, and under Rule 23(b)(3), because

2

purely legal questions predominate and no practical alternative exists for thousands who cannot litigate individually.

The merits reinforce class treatment. Courts have found the Hold Directives reviewable, and one has vacated them outright. *Dorcas Int'l Inst. of R.I. v. USCIS*, --- F. Supp. 3d ----, No. 26-cv-132-JJM-PAS, 2026 WL 1622708 (D.R.I. June 5, 2026). The directives fail every TRAC factor, bear multiple State Farm hallmarks of arbitrary action, and cannot rest on § 1182(f), an entry statute that does not reach domestic adjudication. Certification permits resolution of these common questions in one proceeding.

## PROPOSED CLASS DEFINITION

Pursuant to the Second Amended Complaint (D.E. 63 at ¶ 68), Plaintiffs propose the following class:

All Cuban nationals who (1) are arriving aliens within the meaning of 8 C.F.R. § 1.2 who were paroled into the United States under section 212(d)(5) of the INA; (2) have remained physically present in the United States for at least one year following their parole; (3) have properly filed a Form I-485 Application to Register Permanent Residence or Adjust Status pursuant to the CAA with USCIS; and (4) whose I-485 applications are currently subject to the adjudication hold imposed by the Hold Directives, Policy Memorandum PM-602-0192 (December 2, 2025), and/or Policy Memorandum PM-602-0194 (January 1, 2026).

Excluded from the class are: Defendants, their officers, agents, and employees; any member of the federal judiciary assigned to this matter; and any person whose Form I-485 application has been finally adjudicated on the merits, whether granted or denied, prior to the date of class certification.

**BACKGROUND**

**A. The Cuban Adjustment Act: Remedial Legislation With Deep Roots.**

Congress enacted the CAA in 1966 to remedy a specific gap: Cuban nationals who fled Communist rule had been paroled into the United States in large numbers since 1961 but had no legal pathway to regularize their status without departing the country. H.R. Rep. No. 89-1978, at 3–4 (1966). From enactment, the CAA has been recognized as remedial legislation requiring broad construction. *Matter of Riva*, 12 I&N Dec. 56, 58 (Reg. Comm'r 1967).

Congress expressly extended CAA adjustment both to individuals "inspected and admitted" and to those "paroled," Pub. L. No. 89-732, § 1, 80 Stat. 1161, as amended by Pub. L. No. 94-571, § 8, 90 Stat. 2706 (1976), thereby conferring a domestic pathway to permanent residence on Cuban nationals who remain arriving aliens under 8 C.F.R. § 1.2. The statute has never lapsed. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 606(a) preserved the CAA until a presidential determination of democratic governance in Cuba. 110 Stat. 3009-695.

**B. The Proposed Class: Arriving Aliens With Exclusive USCIS Jurisdiction.**

The SAC's limitation to paroled arriving aliens is significant in two respects. First, arriving aliens remain applicants for admission even after parole: "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act." 8 C.F.R. § 1.2. Second, USCIS holds exclusive jurisdiction over arriving aliens' adjustment applications; no immigration judge may act. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(ii). Every member thus occupies the identical posture: USCIS is the only available forum, and the Hold Directives have closed it indefinitely.

**C. The Hold Directives and Their Legal Infirmity.**

4

On June 4, 2025, the President issued Proclamation 10949 under 8 U.S.C. § 1182(f), restricting the entry of certain foreign nationals, including nationals of Cuba. On December 16, 2025, Proclamation 10998, 90 Fed. Reg. 59717 (Dec. 19, 2025), effective January 1, 2026, narrowed and superseded in part the country list while continuing and expanding the entry restrictions. By their plain terms, both proclamations govern individuals outside the United States seeking entry, not individuals already physically present following lawful parole.

USCIS nonetheless extended the entry proclamations into the domestic adjudication context. PM-602-0192 (December 2, 2025) placed a categorical hold on all pending benefit applications filed by nationals of listed countries, including Cuba; PM-602-0194 (January 1, 2026) expanded the country list. Neither provides a timeline for resumption or any mechanism for individualized review; by their own terms, the hold remains in effect until lifted by the USCIS Director.

Federal courts have consistently held that § 1182(f) cannot override statutory immigration procedures enacted by Congress. The D.C. Circuit recently confirmed as much, holding that § 1182(f) proclamations cannot override the specific statutory procedures Congress has mandated for noncitizens already present in the United States. *Refugee & Immigrant Center for Education & Legal Services v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026). And "[i]t is a commonplace of statutory construction that the specific governs the general," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)) — "particularly true where," as here, "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id*. (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). The CAA is the specific statute; §

5

1182(f) is the general authority to "suspend the entry" of aliens, governing entry from abroad — not domestic adjudication for parolees already present.

The Supreme Court has already recognized these limits. In *Trump v. Hawaii*, the Court upheld the proclamation there as "expressly premised on legitimate purposes: preventing entry of nationals who cannot be adequately vetted and inducing other nations to improve their practices" — not the nullification of statutory benefits held by persons already here. 585 U.S. 667, 706 (2018). Furthermore, as the District of Massachusetts held as to these very proclamations, they "restrict the entry of noncitizens from abroad and do not reach the adjudication of benefit applications for individuals already within the United States." *Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL 1170971, at *7–10 (D. Mass. Apr. 30, 2026); see also *Gomez v. Trump*, 485 F. Supp. 3d 145 (D.D.C. 2020).

Congress's intent is unmistakable. IIRIRA § 606(a) keeps the CAA in effect until the President determines that a democratically elected government is in power in Cuba. Pub. L. No. 104-208, § 606(a), 110 Stat. 3009-695 (1996). This determination has never been made. The CAA grants the substantive right to adjust; § 606(a) shields it from executive abrogation. The Hold Directives attempt by administrative fiat what may not be done without a § 606(a) determination: the effective nullification of the CAA.

At its self-imposed ninety-day review milestone, USCIS resumed adjudication for numerous categories of applicants yet continued to suspend CAA adjudications categorically. See *Lorente v. U.S. Citizenship & Immigr. Servs.*, No. 25-cv-25646-BLOOM/Elfenbein, 2026 WL 1396116, at *2 (S.D. Fla. May 19, 2026) ("Cuban nationals were not listed among the groups for whom the adjudicative hold has been lifted"). The continued freeze is driven by deliberate policy, not resource constraints. D.E. 63 at ¶¶ 63–64.

Each of the eighteen named Plaintiffs is a Cuban national who was paroled into the United States under INA § 212(d)(5), remained physically present for at least one year, properly filed a Form I-485 pursuant to the CAA, received a USCIS receipt notice, and has had their application suspended under the Hold Directives with no end date. D.E. 63 at ¶¶ 15–32.

This action challenges only the Hold Directives. Plaintiffs expressly do not challenge in this action the Discretion Directives, which cannot be applied to any class member's application while the Hold Directives prevent adjudication from occurring. D.E. 63 at ¶ 66. Plaintiffs reserve all claims concerning the Discretion Directives should the adjudication hold be lifted.

### <u>THIS COURT HAS JURISDICTION</u>

This Court has jurisdiction over Plaintiffs' unlawfully-withheld claim. 5 U.S.C. § 706(1). A court in this District has already so held as to these same Hold Directives, in a materially identical CAA case, rejecting the Government's unreviewability argument and denying dismissal. *Lorente*, 2026 WL 1396116.

The Administrative Procedure Act ("APA") requires agencies to conclude matters presented to them within a reasonable time. 5 U.S.C. § 555(b). USCIS thus bears a nondiscretionary duty to adjudicate a properly filed application, and the discretionary character of the merits decision does not make the duty to decide discretionary. *Lorente*, 2026 WL 1396116, at *6; *Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1205 (M.D. Fla. 2007); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 154 (D. Mass. 2007); *Joshua v. Jaddou*, No. 1:24-cv-00667-JRR, 2025 WL 449001, at *7 (D. Md. Feb. 10, 2025). Section 706(1) empowers courts to compel legally required, discrete agency action. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Courts have reached the same conclusion as to these very Hold Directives. See *Doe v. Trump*, 2026 WL 1170971, at *11 (application of the hold to adjustment applications is not

committed to agency discretion); *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *7 (N.D. Cal. Feb. 20, 2026). The District of Rhode Island reached the merits and vacated the Hold Directives outright, a disposition that necessarily presupposed jurisdiction to review them. *Dorcas*, 2026 WL 1622708.

**A. Kanapuram Does Not Bar Review of a Categorical Country-Based Hold.**

Defendants will likely argue that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of USCIS's decision to hold adjustment applications in abeyance until visa numbers become available. *Kanapuram v. Director, USCIS*, 131 F.4th 1302, 1307 (11th Cir. 2025). However, *Kanapuram* is a visa retrogression case, and it does not reach this action. *Lorente*, 2026 WL 1396116, at *7 (so holding as to these Hold Directives).

The distinction is structural. Section 1252(a)(2)(B)(ii) strips review only of decisions whose discretion Congress specified in the statute. *Kucana v. Holde*r, 558 U.S. 233, 246–47 (2010). In the retrogression cases, the hold was compelled by statutory visa limits and tied to a defined condition precedent, visa availability. See *Kanapuram*, 131 F.4th at 1307; *Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025); *Geda v. USCIS*, 126 F.4th 835, 843–47 (3d Cir. 2025); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024); *Thigulla v. Jaddou*, 94 F.4th 770, 777 (8th Cir. 2024).

The Hold Directives are the opposite. Nothing in the INA, the CAA, or the APA authorizes USCIS to stop adjudicating altogether for one nationality. *Lorente*, 2026 WL 1396116, at *7. The directives identify no condition precedent, and the hold persists until the Director lifts it, indefinitely. *Id.*; *Varniab*, 2026 WL 485490, at *7. Where Congress specified no discretion, § 1252(a)(2)(B)(ii) has nothing to attach to.

Section 1252(a)(2)(B)(i) likewise presents no bar. It reaches "any judgment regarding the granting of relief" under § 1255, an authoritative decision in an individual adjudication. *Patel v. Garland*, 596 U.S. 328, 338–39, 347 (2022). A categorical policy is not a judgment on any individual application, and none has issued as to any class member. That is the whole of Plaintiffs' complaint.

Defendants' own position confirms the point. Before Judge Bloom, the Government argued that the Hold Directives effectively prevent USCIS from adjudicating the application. *Lorente*, 2026 WL 1396116, at *9. An agency that is prohibited from deciding is not deciding slowly. It is not deciding at all.

**B. Redressability Is Satisfied.**

Defendants argued in Lorente that no relief could redress the injury because the Hold Directives themselves prevent adjudication. The court correctly rejected that circular argument: a plaintiff cannot be denied standing on the ground that the challenged unlawful action prevents relief. *Lorente*, 2026 WL 1396116, at *10 (citing *Abdulraheemzai v. Noem*, No. 25-cv-05098-JST, 2026 WL 1113722, at *5 (N.D. Cal. Apr. 24, 2026)). An injunction setting aside the directives redresses every member's injury completely.

<u>**LEGAL STANDARD FOR CLASS CERTIFICATION**</u>

Class certification requires the four Rule 23(a) prerequisites plus at least one Rule 23(b) subsection. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The court's "rigorous analysis," is not a merits inquiry. *Id*. at 350–51; *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013). The question is whether Rule 23 is satisfied, not whether Plaintiffs will prevail. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

Rule 23 is construed liberally in suits challenging uniform government policies applied categorically to a defined class. Challenges to categorical immigration policies present precisely the common legal questions that class treatment is designed to resolve. *Ibrahim v. Acosta*, 326 F.R.D. 696, 699 (S.D. Fla. 2018); see also *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235 (S.D. Fla. 2025) (certifying provisional class of noncitizens challenging categorical state immigration law).

**ARGUMENT**

**I. THE PROPOSED CLASS SATISFIES ALL REQUIREMENTS OF RULE 23(a).**

**A. Numerosity - Rule 23(a)(1).**

Rule 23(a)(1) requires that joinder of all members be impracticable. "[G]enerally a class size less than twenty-one is inadequate, while a class size of more than forty is adequate." *Ibrahim v. Acosta*, 326 F.R.D. 696, 699 (S.D. Fla. 2018). A reasonable estimate suffices. *Collins v. Erin Cap. Mgmt.*, LLC, 290 F.R.D. 689 (S.D. Fla. 2013); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997). Numerosity may rest on inference where the exact size is known only to the defendant. *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986); see *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235 (S.D. Fla. 2025) (provisional class of noncitizens).

The class comfortably satisfies numerosity. More than 110,000 Cuban nationals had been paroled under the CHNV process alone as of October 2024. D.E. 63 at ¶ 69. In fact, Cubans have been paroled under § 212(d)(5) for decades through the Cuban Family Reunification Parole Program, wet-foot/dry-foot era entries, and individual humanitarian grants. The universe of paroled Cubans with pending CAA applications far exceeds any single program's statistics.

Numerosity does not depend on any particular filing-rate estimate. Even on a conservative assumption that only ten percent of the more than 110,000 CHNV parolees filed CAA-based I-485 applications now frozen, the class would exceed 11,000 members. U.S. Customs & Border Prot., *CBP Releases October 2024 Monthly Update* (Nov. 19, 2024). Those figures exclude Cubans paroled through other mechanisms. See *Collins*, 290 F.R.D. 689; *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656.

The Government's own conduct confirms the class's size. USCIS issued a categorical directive rather than individualized hold orders, and when it lifted the hold for certain categories at the ninety-day milestone, Cuban nationals were not among them. *Lorente*, 2026 WL 1396116, at *2. A population vast enough to warrant categorical treatment is vast enough to make joinder impracticable.

The exact number lies within Defendants' exclusive possession and will be confirmed through discovery. Class members are also geographically dispersed throughout South Florida and beyond, and many lack English proficiency, legal sophistication, or the resources to retain individual counsel. These facts make joinder functionally impossible. See *Kilgo*, 789 F.2d at 878; *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1197–98 (S.D. Fla. 2020); *Ibrahim*, 326 F.R.D. at 699.

## B. Ascertainability.

The Eleventh Circuit has not adopted ascertainability as a formal Rule 23 prerequisite, and it has no application to a Rule 23(b)(2) class seeking indivisible relief. See *Wal-Mart*, 564 U.S. at 360. In any event, the class is readily ascertainable. Ascertainability requires an administratively feasible method of identifying members. See *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 947 (11th Cir. 2015). That standard is met. Every element of the definition — nationality, parole,

11

presence, filing, and the hold itself — is verifiable from official government records, so membership can be identified entirely from USCIS's own files. D.E. 63 at ¶ 70.

## C. Commonality - Rule 23(a)(2).

Rule 23(a)(2) requires a common question of law or fact, a "common contention" whose resolution "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. A single common question suffices, and what matters is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. at 350, 359 (emphasis in original) (quoting *Nagareda, Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

### *The Hold Directives are the paradigmatic case for commonality.*

The common contention, whether Defendants' categorical freeze of CAA adjudications is lawful, will generate a common answer because the directives draw no distinctions among class members. The directives apply identically, by operation of a single blanket policy, to every Cuban national with a pending CAA-based I-485 application who was paroled under § 212(d)(5). If the Hold Directives are unlawful as to one member, they are unlawful as to all. No individualized inquiry could alter that determination.

Decisions addressing these same Hold Directives confirm the point. See *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19 (D.D.C. 2025) (all members faced the same threat and raised the same challenges), aff'd sub nom. *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026); *Nat'l TPS All. v. Noem*, No. 25-cv-05687-TLT, 2025 WL 4110426 (N.D. Cal. Oct. 2, 2025) (system-wide practice or policy); *Huashan Zhang v. USCIS*, 344 F. Supp. 3d 32 (D.D.C. 2018) (same); *O.A. v. Trump*, 404 F. Supp.

3d 109 (D.D.C. 2019) (categorical asylum rule); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1 (D.D.C. 2025).

This action presents at least six common legal questions, each arising from the identical Hold Directives applied uniformly to every class member, and each resolvable in one stroke:

1. Whether Defendants' categorical suspension of CAA adjudications constitutes agency action unlawfully withheld in violation of 5 U.S.C. § 706(1);

2. Whether the suspension constitutes unreasonable delay under 5 U.S.C. §§ 555(b) and 706(1);

3. Whether the suspension is arbitrary and capricious under 5 U.S.C. § 706(2)(A), including whether Defendants failed to account for reliance interests created by nearly six decades of practice under the CAA, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30–32 (2020);

4. Whether Defendants exceeded their statutory authority by invoking 8 U.S.C. § 1182(f), an entry-restriction statute governing admission from abroad, to suspend domestic benefit adjudications for individuals already physically present in the United States following parole, see *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391 (2024) (courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority);

5. Whether the suspension conflicts with and effectively nullifies the CAA, which expressly extends adjustment to paroled arriving aliens, under the canon that specific statutes govern general authority, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); and

6. Whether the suspension violates the Due Process Clause of the Fifth Amendment by foreclosing the only forum in which arriving aliens may obtain adjudication of their CAA

applications while immigration enforcement continues against the same population, *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Each question arises from the same Hold Directives applied uniformly to every class member, and the answers will resolve Defendants' liability as to the entire class simultaneously. D.E. 63 at ¶ 72.

### *The Arbitrary-and-Capricious Claim Underscores Commonality.*

The claim is a powerful common question because the deficiencies appear on the face of the directives. Under *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, agency action would "normally" be arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." 463 U.S. 29, 43 (1983). The Hold Directives exhibit multiple such hallmarks.

First, USCIS failed to consider obvious alternatives to a blanket hold, such as continued individualized adjudication applying any new eligibility criteria case by case. See *State Farm*, 463 U.S. at 48.

Second, USCIS offered no reasoned explanation for singling out Cuban CAA applicants for continued non-adjudication after resuming adjudication for numerous other categories at the ninety-day milestone. *Lorente*, 2026 WL 1396116, at *2. An agency that treats similarly situated groups differently must explain the basis for the distinction.

Third, Defendants failed to account for the massive reliance interests created by nearly sixty years of CAA adjudication, upending settled expectations without acknowledgment, let alone

reasoned analysis. See *Regents*, 591 U.S. at 30–33 (agency must assess and weigh reliance interests engendered by its longstanding policy before rescinding it).

These deficiencies are common to every class member: whether the directives considered alternatives, provided reasoned explanations, or accounted for reliance interests will be resolved once, for the entire class, on a single administrative record.

Differing procedural postures do not defeat commonality. A similar class of noncitizens challenging a USCIS policy change satisfied commonality despite members' varied postures because all sought a single determination of the policy's lawfulness, and the same court certified a class resting partly on due process, distinguishing *Jennings v. Rodriguez*, 583 U.S. 281 (2018). *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 53–56 (D. Md. 2020). So too here.

### *The Narrowed Class Definition Eliminates the Commonality Concern Identified in Prior Briefing.*

The Magistrate's Report noted that the original, broader definition risked a class divided by conflicting interests. D.E. 69 at 3–5. The SAC's definition resolves that concern. Every member is an arriving alien over whose application USCIS has exclusive jurisdiction, so every member faces the identical predicament and no divergence of interests exists. 8 C.F.R. § 1245.2(a)(1)(ii).

The Refusal to Adjudicate Is a Common Class-Wide Legal Question. Plaintiffs do not contend that USCIS is adjudicating too slowly; they contend it has stopped adjudicating. Defendants themselves describe the Hold Directives as preventing adjudication, and the memoranda contain no timeline and no individualized review. At the ninety-day milestone, the hold was lifted for numerous categories, not Cuban nationals. *Lorente*, 2026 WL 1396116, at *2; D.E. 63 at ¶¶ 63–64. The freeze is deliberate policy, operating identically on every member.

Whether that categorical refusal is agency action unlawfully withheld under § 706(1) will be answered once. Every member was paroled as an arriving alien, satisfied the one-year presence requirement, filed a Form I-485, and received a receipt notice; every member awaits the same decision from the only agency empowered to make it. *Heckler v. Chaney* is no shield. 470 U.S. 821 (1985). It addressed prosecutorial discretion over third-party enforcement, not refusal to perform a legally required adjudicatory function. *Norton*, 542 U.S. at 64.

**D. Typicality - Rule 23(a)(3).**

Rule 23(a)(3) requires that the representatives' claims be typical of the class. Typicality is satisfied where the claims "arise from the same event or pattern or practice and are based on the same legal theory," requiring only "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); see also *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *Schojan v. Papa John's Int'l, Inc.*, 303 F.R.D. 659, 666–67 (M.D. Fla. 2014) (factual variations do not defeat typicality absent a markedly different position).

The nexus here is total. Each named Plaintiff occupies the identical posture as every absent member: a Cuban national paroled under § 212(d)(5), present as an arriving alien for at least a year, with a properly filed I-485, a receipt notice, and a frozen application. D.E. 63 at ¶¶ 15–32, 73. Their claims are legally identical with no unique claims or defenses. Where the challenged conduct is a policy applying to all members, "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); see also *Ibrahim*, 326 F.R.D. at 700–01.

**E. Adequacy of Representation - Rule 23(a)(4) and Rule 23(g).**

16

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the class. The inquiry has two components: (1) whether any substantial conflicts of interest exist between the named plaintiffs and the class, and (2) whether the named plaintiffs will adequately prosecute the action. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

No conflict, substantial or otherwise, exists. Because every member is an arriving alien facing the identical deprivation, every member seeks precisely the same relief. No member benefits from the directives' continuation, and none is harmed by lifting them. See *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003); *Nat'l TPS All.*, 2025 WL 4110426.

The named Plaintiffs have demonstrated their commitment to vigorous prosecution. They joined a federal lawsuit against the executive branch, accepted pseudonymous filing under this Court's Order (D.E. 16) notwithstanding the risks that step reflects, and cooperated with counsel through three complaints and multiple rounds of briefing. With eighteen representatives, the action has a broad base ensuring continuity.

Proposed class counsel, Arno Javier Lemus of Lemus Law Group, LLC, is qualified, experienced, and able to vigorously represent the proposed class. Counsel satisfies each requirement of Federal Rule of Civil Procedure 23(g)(1)(A), and the depth of counsel's experience in both immigration law and federal litigation confirms appointment is warranted.

First, counsel identified and investigated the claims in this action, including reviewing the Hold Directives and their relationship to Proclamations 10949 and 10998, developing the § 1182(f) misapplication theory, and reviewing the immigration files of all eighteen named Plaintiffs. Fed. R. Civ. P. 23(g)(1)(A)(i).

17

Second, counsel has thorough knowledge of the applicable framework: roughly ten years as Managing Attorney at Youth Co-Op, Inc., supervising representation of approximately 2,000 immigration clients — most Cuban nationals with CAA matters — plus habeas and mandamus litigation in federal courts, including this District, compelling agency action on delayed adjudications, and a pending class action in this District under the same statutory framework. *Bada Pando v. Noem*, No. 1:25-cv-25268 (S.D. Fla.). Fed. R. Civ. P. 23(g)(1)(A)(ii).

Third, counsel has committed the resources of Lemus Law Group to vigorously prosecute this action through final judgment and any appellate proceedings. Lemus Law Group is supported by two attorneys and twenty paralegal and clerical support staff. Fed. R. Civ. P. 23(g)(1)(A)(iii).

Fourth, no other counsel has appeared on behalf of Plaintiffs in this action, and no competing litigation presents a coordination concern. Fed. R. Civ. P. 23(g)(1)(A)(iv).

## II. THE PROPOSED CLASS INDEPENDENTLY SATISFIES RULE 23(b).

In addition to satisfying all four requirements of Rule 23(a), the proposed class qualifies for certification under Rule 23(b)(2), Rule 23(b)(1)(A), and Rule 23(b)(3). Plaintiffs' primary basis is Rule 23(b)(2); they seek certification under Rule 23(b)(1)(A) and, in the further alternative, Rule 23(b)(3).

### A. Rule 23(b)(2) - The Hold Directives Are a Textbook Basis for Injunctive Class Certification.

Rule 23(b)(2) permits certification where the opposing party "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Civil rights cases charging class-based discrimination are the prime examples. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Certification is appropriate when "a single injunction or

18

declaratory judgment would provide relief to each member of the class" — when "the relief sought must perforce affect the entire class at once." *Wal-Mart*, 564 U.S. at 360, 361–62.

That describes this case. The Hold Directives apply across the board to every Cuban national with a pending CAA-based I-485 who was paroled under § 212(d)(5) with no distinctions, no individualized review, and no timeline. One declaratory judgment and one injunction compelling resumed adjudication would give every member the same relief without case-by-case determination. There is no member for whom the relief would be inappropriate.

Rule 23(b)(2) is the established vehicle for challenges to categorical immigration policies. See *Mullin*, 174 F.4th 81 (affirming (b)(2) certification of class challenging proclamation and implementing guidance); *Nat'l TPS All.*, 2025 WL 4110426 (categorical DHS policy); *Doe #1 v. Trump*, 335 F.R.D. 416, 437–39 (D. Or. 2020); *Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 990–92 (N.D. Cal. 2018); *J.O.P.*, 338 F.R.D. at 57.

The fact that individual class members may receive adjudications at different times is immaterial to certification. Plaintiffs challenge a single course of conduct, Defendants' categorical refusal to adjudicate, and seek declaratory and injunctive relief directed at that conduct on behalf of the class as a whole. D.E. 63 at ¶ 76; see *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of Chicago*, 797 F.3d 426, 441–42 (7th Cir. 2015).

### Section 1252(f)(1) Does Not Bar Certification.

Section 1252(f)(1) does not bar certification. It restrains courts from enjoining "the operation of" 8 U.S.C. §§ 1221–32. The Hold Directives are not an operation of those provisions but an administrative construct grounded in § 1182(f), extended by memorandum into domestic adjudication governed by § 1255 and the CAA. Enjoining a policy Congress never authorized is not enjoining the operation of a statute Congress enacted.

In any event, § 1252(f)(1) does not preclude certification of a class seeking declaratory relief and APA vacatur. See *Immigr. Ctr. for Women & Children v. Noem*, 2026 WL 1455004 (C.D. Cal. May 20, 2026) (declaratory relief and stay or vacatur under 5 U.S.C. §§ 705–06 not barred); *Rodriguez v. Bostock*, 349 F.R.D. 333 (W.D. Wash. 2025) (classwide declaratory relief supports certification). Plaintiffs seek a declaratory judgment, relief that operates uniformly and is unaffected by § 1252(f)(1).

## B. Rule 23(b)(1)(A) - Individual Litigation Has Already Produced Inconsistent Results Across Districts.

Rule 23(b)(1)(A) authorizes certification where separate actions would risk inconsistent adjudications establishing incompatible standards of conduct for the opposing party, as where a class seeks injunctive or declaratory relief against an ongoing course of conduct that is either legal or illegal as to all members. *Nio v. U.S. Dep't of Homeland Sec.*, 323 F.R.D. 28, 34–35 (D.D.C. 2017); see also *Moreno v. Napolitano*, No. 11 C 5452, 2014 WL 4911938, at \*11 (N.D. Ill. Sept. 30, 2014) (certifying (b)(1)(A) class challenging categorical ICE detainer policies).

That risk is already materializing. Courts in this District, Massachusetts, California, Rhode Island, and the District of Columbia have reached these Hold Directives with varying reasoning and relief. Compare *Lorente*, 2026 WL 1396116 (denying dismissal), with *Varniab*, 2026 WL 485490 (arbitrary-and-capricious review), *Dorcas*, 2026 WL 1622708 (vacatur), and *Doe v. Trump*, 2026 WL 1170971 (merits of the proclamations' domestic application). One plaintiff in this District has individual relief; the vast majority of affected Cubans do not.

If individual litigation proliferates, one court might order USCIS to adjudicate a particular application while another upholds the identical policy, leaving the agency subject to irreconcilable judicial commands as to identically situated individuals. That is precisely the situation Rule

20

23(b)(1)(A) was designed to prevent: certification produces a single authoritative ruling and eliminates the risk of incompatible standards of conduct for USCIS. D.E. 63 at ¶ 75.

## C. Rule 23(b)(3) - Predominance and Superiority.

In the alternative, the proposed class satisfies Rule 23(b)(3), which requires that common questions predominate over individual ones and that a class action be superior to other available methods of adjudication.

Because the relief sought is indivisible and classwide, Rule 23(b)(2) is the natural vehicle and the Court need not reach Rule 23(b)(3); Plaintiffs invoke it only as a further alternative. Certification under Rule 23(b)(3) would trigger the individualized-notice and opt-out procedures of Rule 23(c)(2)(B), but those procedures present no obstacle here. Notice may be effected through the indirect means described below, and the opt-out right does not undermine class treatment, because a declaratory judgment and injunction setting aside the Hold Directives would operate uniformly whether or not any individual member elected to proceed separately. No feature of Rule 23(b)(3) makes class treatment less appropriate than it is under Rule 23(b)(2).

The only substantive questions — unlawful withholding, arbitrariness, the limits of § 1182(f), the directives' conflict with the CAA, and due process — are purely legal and resolved by the same analysis of the same conduct. There are no meaningful individual factual questions. Each member was paroled, waited a year, filed, and received a receipt notice, and USCIS has exclusive jurisdiction over each application. Common questions plainly predominate. *Amchem*, 521 U.S. at 623.

### *The Hold Directives Fail Every Factor of the TRAC Framework.*

Although the primary vehicle for review is 5 U.S.C. § 706(1), the TRAC factors confirm that the categorical freeze constitutes unreasonable delay. *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984). Every factor favors Plaintiffs:

First, a "rule of reason" governs, considering the particular facts and circumstances. *Id*. at 80; *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). More than seven months have passed with no timeline, benchmark, or criteria for review. The agency has not slowed the queue; it has stopped it, indefinitely, for one nationality.

Second, Congress provided an unmistakable timetable: the CAA reflects a congressional determination that eligible Cuban nationals should adjust status domestically, and IIRIRA § 606(a) preserves the statute until a presidential determination that has never been made. Indefinite suspension contravenes that manifest intent.

Third, the health and human welfare interests at stake are substantial. Class members have built lives, families, and livelihoods here while awaiting adjudication. The freeze leaves them in legal limbo, unable to obtain the stability of permanent residence and vulnerable to parole revocation and removal.

Fourth, expediting action would not burden competing agency priorities. CAA adjudication is a routine function USCIS performed for sixty years and has already resumed for other categories after the ninety-day review. *Lorente*, 2026 WL 1396116, at *2. Relief would simply restore the status quo ante.

Fifth, the interests prejudiced by the delay are severe. Class members' statutory right to adjudication, a right Congress specifically conferred through the CAA, is being nullified entirely, and unlike visa retrogression, the delay is tied to no congressionally mandated limit and no end point.

Sixth, although the Court "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," TRAC, 750 F.2d at 80, the circumstances suggest exactly that: resuming adjudication for some nationalities while continuing a blanket hold for Cuban nationals cannot be explained as good-faith resource allocation. D.E. 63 at ¶¶ 63–64. Each factor presents an identical, classwide legal question resolvable on a common administrative record and confirms that this is categorical refusal, not slow processing.

A class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Individual litigation is already straining the system. *Lorente* required one Cuban national to litigate alone in this District, and similar actions are pending in Massachusetts, California, Rhode Island, and the District of Columbia. Replicated classwide, that means hundreds of identical cases. The class device exists to "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Requiring thousands of Cuban nationals, many of them lacking English proficiency, legal sophistication, or resources, to litigate identical claims individually would waste judicial resources, risk inconsistent outcomes, and deny practical access to review. All four Rule 23(b)(3) factors support certification. Members have no interest in controlling individual prosecutions; no competing class litigation is pending; concentration in this District is appropriate, as most members live in South Florida; and the purely legal claims present no management difficulty.

This case presents the most manageable form of class litigation imaginable. There are no damages calculations, no individualized causation questions, no variations in members' legal

23

positions, and no factual disputes requiring testimony. It will be resolved entirely through APA review of the administrative record.

In the event the Court requests a trial plan, no trial is necessary in the traditional sense. No individualized adjudication is required at any stage. The entire case turns on the legal validity of two policy memoranda as applied to a defined class, resolvable on a single set of briefs and a single administrative record.

The only case-specific manageability consideration is class notice. Because named Plaintiffs proceed pseudonymously and class members may share concerns about public identification, the Court may direct notice through indirect means such as immigration attorneys practicing in South Florida, Cuban-American and immigrant-advocacy organizations, and Spanish-language media. D.E. 63 at ¶ 80. Plaintiffs will submit a proposed notice plan within thirty days of any certification order.

Plaintiffs further reserve, without developing it here, whether the continued selective application of the Hold Directives to Cuban nationals after adjudication resumed for other groups presents an additional common question under equal protection principles.

## CONCLUSION

The proposed class satisfies every requirement of Rule 23(a) and qualifies independently under Rule 23(b)(2), (b)(1)(A), and (b)(3). All members share identical claims arising from the same categorical directives, applied uniformly to arriving aliens whose applications only USCIS may adjudicate, and the narrowed definition addresses each concern raised in prior briefing. Class treatment permits resolution of the Hold Directives' legality in a single proceeding.

For the foregoing reasons, Plaintiffs respectfully request that this Court:

25

1. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), (b)(1)(A), and/or (b)(3);

2. Appoint Plaintiffs E.M.P.C., et al., as class representatives; and

3. Appoint Arno Javier Lemus of Lemus Law Group, LLC as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

Respectfully submitted,

/s/ Arno Javier Lemus
Arno Javier Lemus, Esq.
Florida Bar No. 0103075
Lemus Law Group, LLC
1024 NW 102 PL
Miami, Florida 33172
Telephone: (786) 816-2795
Email: arno@lemus.org
*Counsel for Plaintiffs and the Proposed Class*

Dated: July 29, 2026

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), Plaintiffs' counsel certifies that counsel previously conferred with counsel for Defendants regarding the relief sought in this motion. Defendants object to the present motion.

/s/ Arno Javier Lemus
Arno Javier Lemus

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 29th day of July, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


/s/ Arno Javier Lemus
Arno Javier Lemus