# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

IDANIA M. ACOSTA REYNOSO
et al.,

      Plaintiffs,

v.

                              Case No. 8:26-cv-1314-KKM-NHA

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES
et al.,

      Defendants.

_____

## **ORDER**

Plaintiffs are 143 Cuban nationals who allege that the United States Citizenship and Immigration Services' (USCIS)[1] "unreasonable delay in deciding their long-pending [Form I-485] applications for lawful permanent residence pursuant to the Cuban Adjustment Act of 1966" and their Form I-765 applications for employment authorization violates the Administrative Procedure Act and the Mandamus Act. *See* 3d Am. Compl. (Doc. 33) ¶¶ 1–4, 207–240. The plaintiffs move for a preliminary injunction prohibiting the defendants from applying various USCIS policy memoranda and compelling

---

[1] The plaintiffs also name as defendants USCIS Director Joseph Edlow, the Department of Homeland Security (DHS), and DHS Secretary Markwayne Mullin. *See* 3d Am. Compl.

the defendants to adjudicate the plaintiffs' pending Form I-485 and Form I-765 applications. *See* Mot. (Doc. 25) at 1–2; Mem. (Doc. 25-1). The government responds in opposition. Resp. (Doc. 39). Because the plaintiffs fail to establish that they are substantially likely to succeed on the merits or that they face irreparable injury, I deny the motion for a preliminary injunction.

## I.   BACKGROUND

The plaintiffs are 143 Cuban nationals who "were lawfully admitted or paroled into the United States" and have filed petitions for adjustment of status (Form I-485) under the Cuban Adjustment Act (CAA) and Form I-765 petitions for employment authorization (EAD) under "their pending CAA petitions." 3d Am. Compl. ¶ 2. Despite the plaintiffs' "complian[ce] with all USCIS requirements," in certain cases the "USCIS has failed to render adjudicative decisions on the Plaintiffs' CAA and EAD petitions" for over three years. *Id.* ¶ 4; *see* Mem. at 3. The plaintiffs allege that they remain "in a state of prolonged and indefinite immigration limbo" and "face gaps in employment authorization" until USCIS adjudicates their petitions. 3d Am. Compl. ¶¶ 4–5.

According to the plaintiffs, their delayed adjudications are being "exacerbated" by three USCIS policy memoranda, PM-602-0192, PM-602-0194, and PM-602-0199, which USCIS issued in response to Presidential Proclamation 10949's suspension or limitation on entry of nationals from specified countries. *Id.* ¶¶ 1, 180, 193–95, 216–18. The plaintiffs argue that

2

"these arbitrary, capricious, and unlawful policies subvert the underlying purpose of the Immigration and Nationality Act (INA) as established by Congress." Mem. at 7.

First, on December 2, 2025, USCIS issued PM-602-0192, "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries."[2] This memorandum allegedly "halted all adjudications of pending immigrant benefit applications" for individuals from thirty-nine countries, including Cuba. *See* 3d Am. Compl. ¶¶ 167, 203; *see* Resp. at 4 (asserting that PM-602-0192 "directed adjudicative holds and re-reviews of certain benefit applications for nationals of the same countries" listed in the proclamation).

On January 1, 2026, USCIS "continued" the adjudication hold by issuing PM-602-0194.[3] *Id.* ¶ 180. PM-602-0194 clarifies that the adjudication "hold" means "a case [can] proceed through processing, up to final adjudication." PM-602-0194 at 2 n.2. The memorandum also "expanded the scope of PM-602-0192 by introducing additional country-based restrictions." Resp. at 5.

---

[2] https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf [https://perma.cc/LZ4H-YCHW] (last visited July 20, 2026).

[3] https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf [https://perma.cc/X8MY-7LS2] (last visited July 20, 2026).

3

Finally, on May 21, 2026, USCIS issued PM-602-0199, "Adjustment of Status is a Matter of Discretion and Administrative Grace, and an Extraordinary Relief that Permits Applicants to Dispense with the Ordinary Consular Visa Process."[4] The memorandum "reminds officers and the public that adjustment of status under section 245 of the Immigration and Nationality Act (INA) is a matter of discretion and administrative grace not designed to supersede the regular consular processing of immigrant visas." *Id.* at 1. Thus, "the discretionary approval of such a request is extraordinary given Congress's intent that aliens should depart once the purpose for which they sought parole or nonimmigrant admission from DHS has been accomplished." *Id.* at 4.

On June 5, 2026, the United States District Court for the District of Rhode Island vacated USCIS's "Benefits Hold Policy," which the court described as "USCIS's decision to place a hold on all adjudications of immigration benefit requests submitted by people from the Travel Ban Countries," including Cuba. *See Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.*, No. 26-CV-132-JJM-PAS, 2026 WL 1622708, at *8 (D.R.I. June 5, 2026), *judgment entered*, No. 26-CV-132-JJM-PAS, 2026 WL 1695954 (D.R.I.

---

[4] https://www.uscis.gov/sites/default/files/document/memos/PM-602-0199-AdjustmentOfStatusAndDiscretion-20260521.pdf [https://perma.cc/5LNT-99DF] (last visited July 20, 2026).

June 11, 2026). Accordingly, USCIS announced that it is not enforcing the hold policy. USCIS, *Court Order on Hold Policies* (June 12, 2026), https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies [https://perma.cc/K5K8-6TR9] (last visited July 20, 2026). The third policy memorandum, PM-602-0199, was not at issue in *Dorcas*.

The plaintiffs filed the present action on May 4, 2026, asserting three claims under the APA: an unreasonable delay of adjudication claim of their Form I-485 petitions (Count I) and Form I-765 petitions (Count II), as well as a claim that the defendants' "Benefits Hold Policy, as enshrined in PM-602-0192, and its successor and related memoranda," is arbitrary and capricious (Count V). *See* 3d Am. Compl. ¶¶ 219–32, 243–53. The plaintiffs also bring claims under the Mandamus Act, 28 U.S.C. § 1361 (Counts III and IV). *See id.* ¶¶ 233–42. On July 1, 2026, the plaintiffs filed a motion for a temporary restraining order and preliminary injunction enjoining the defendants "from imposing . . . PM 602-0192, 602-0194, 602-0199, as to the 129 Plaintiffs in this action"[5] and compelling the defendants "to adjudicate the Plaintiffs' pending applications within 30 days of this Court's order." Mem. at 15–16; *see* Mot.

---

[5] The complaint has since been amended to add fourteen additional plaintiffs.

5

I denied the plaintiffs' motion for a temporary restraining order but permitted the government an opportunity to respond insofar as the plaintiffs seek a preliminary injunction. *See* Order (Doc. 29).

## II.   LEGAL STANDARD

To obtain a preliminary injunction, a movant must establish (1) "a substantial likelihood of success on the merits"; (2) "irreparable injury" without an injunction; (3) that "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party"; and (4) that, "if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although "[t]he first two factors are the most critical," *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021) (citation modified), the "[f]ailure to show any of the four factors is fatal." *Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

## III.   ANALYSIS

The government argues that the plaintiffs' motion should be denied because it seeks to enjoin policies no longer in effect, fails to establish any of the factors necessary for injunctive relief, and improperly joins plaintiffs in the incorrect venue. *See* Resp. at 1–2. I address each argument in turn.

6

### A. Mootness

At the outset, the government argues that "two of the three Challenged Policies [PM-602-0192 and PM-602-0194] have been vacated and are currently being treated by USCIS as if no longer in effect." Resp. at 2. Thus, in the government's view, "there is nothing for the Court to enjoin." *Id.* The plaintiffs, on the other hand, intimate that uncertainty regarding the outcome of the *Dorcas* litigation means their "irreparable harm . . . is not being mitigated by the vacatur relief." Mot. at 2; Mem. at 14. The plaintiffs do not explain their position further, and the record suggests otherwise.

As explained, an out-of-circuit federal district court vacated and set aside two of the challenged policy memoranda, PM-602-0192 and PM-602-0194, as contrary to law and arbitrary and capricious under the APA. *See Dorcas Int'l*, 2026 WL 1622708, at *10, *54. The government has appealed the order and judgment, *see Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.*, No. 26-1703 (1st Cir. 2026), which the district court refused to stay pending appeal,[6] *see Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.*, No. 26-CV-132-JJM-PAS, 2026 WL 2042424 (D.R.I. July 15, 2026). In the meantime, USCIS announced that, subject to the "court-ordered vacatur" that "applies agency-wide," the challenged hold policy "should be treated as if [it]

---

[6] The plaintiffs filed their motion for preliminary injunctive relief *before* the *Dorcas* court adjudicated the motion for stay.

[is] not in effect." USCIS, *Court Order on Hold Policies* (June 12, 2026), https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies [https://perma.cc/K5K8-6TR9] (last visited July 20, 2026).

The plaintiffs insinuate that their challenge to PM-602-0192 and PM-602-0194 is not moot, and a preliminary injunction is still necessary, because the *Dorcas* litigation might eventually terminate in the government's favor and the government might then reapply the challenged policy memoranda. *See* Mem. at 14. This argument fails. That the government in *Dorcas* filed an appeal "does not suspend the finality of the judgment or permit the losing party to start over in the district court while waiting for the appellate court to act." *Boyd v. Sec'y, Dep't of Corr.*, 114 F.4th 1232, 1238 (11th Cir. 2024). And in the *Dorcas* court's view, its order and final judgment bears on USCIS's treatment of the plaintiffs in this action because vacatur of agency action "applies to the unlawful action itself, rather than merely to its application to the individual challengers." *Dorcas*, 2026 WL 2042424, at *8 (quoting *California v. U.S. Dep't of Transp.*, 808 F. Supp. 3d 291, 312 (D.R.I. 2025)). Other courts and scholars share that conception of how vacatur operates. *See Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."); Jonathan F. Mitchell, *The Writ-Of-Erasure Fallacy*, 104 VA. L.

8

REV. 933, 1012 (2018) (describing a court's power to "set aside" agency action under the APA as "a veto-like power that enables the judiciary to formally revoke an agency's rules, orders, findings, or conclusions").

Although the question remains open whether the APA provides for the remedy of vacatur, *see United States v. Texas*, 599 U.S. 670, 693–703 (Gorsuch, J., concurring) (expressing skepticism that the APA's "set aside" language gives district courts "the power to nullify [agency guidance] with respect to anyone anywhere"), or is even permitted by the Constitution, *see generally* Jameson M. Payne & GianCarlo Canaparo, *Is Vacatur Unconstitutional?*, CTR. FOR THE STUDY OF THE ADMIN. STATE, Working Paper (Feb. 6, 2026); Kathryn Kimball Mizelle, *To Vacate or Not to Vacate: Some (Still) Unanswered Questions in the APA Vacatur Debate*, 2023 HARV. J.L. & PUB. POL'Y. PER CURIAM 1, 20 (2023), the defendants are operating as if the policy memoranda are void in their entirety, not merely enjoined from enforcement against the *Dorcas* plaintiffs. And the defendants did not voluntarily choose that course of conduct—indeed, vacatur of the policy memoranda was part of the *Dorcas* court's final judgment. *See Dorcas*, 2026 WL 1695954, at *3. Thus, by virtue of the odd remedial nature of vacatur, the plaintiffs cannot avoid mootness under the "voluntary cessation" doctrine. *See, e.g.*, *J.T. v. District of Columbia*, 983 F.3d 516, 523 (D.C. Cir. 2020) ("We have held that the voluntary-cessation doctrine has no apparent relevance where the source of cessation lies beyond

9

the unilateral legal authority of any of the named defendants." (citation modified)).

Accordingly, I join the district courts that have found similar challenges to the two policy memoranda moot in the light of *Dorcas* (and did so even before that court denied the government's motion for a stay pending appeal). *See Doe v. Mullin*, No. 1:26-cv-11884-DJC (D. Mass. June 24, 2026), Doc. No. 34 (staying adjudication of challenges to PM-602-0192 and PM-602-0194); *Abdelrahim v. Edlow*, No. 1:26-cv-11995-RGS (D. Mass. June 11, 2026), Doc. No. 12 (same). The record here is even stronger for the government's position. Indeed, USCIS has already issued decisions in some of the challenged Form I-765 applications, *see* Ex. A (Doc. 39-1), including favorable decisions granting employment authorization to at least eight plaintiffs, *see* Ex. B (Doc. 39-2). And "adjudicative action has resumed with several Plaintiffs having recently been scheduled for interviews on their I-485s." Resp. at 20 (citing Ex. C (Doc. 39-3)). Ultimately, then, the plaintiffs do not persuade that the APA challenges remain live with respect to PM-602-0192 or PM-602-0194. The motion for a preliminary injunction is thus denied insofar as it relies on those claims.

### B. Injunctive Relief Factors

Although the parties discuss all four factors necessary for obtaining preliminary injunctive relief, the lack of likelihood of success on the merits or irreparable harm prove fatal to the plaintiffs' motion.

10

### i. Likelihood of Success on the Merits

The defendants argue that the plaintiffs flunk the first, and often most important, factor necessary for injunctive relief—likelihood of success on the merits—because the third policy memoranda, PM-602-0199, does not apply to CAA petitions and because the remaining claims are jurisdictionally barred. *See* Resp. at 5–6, 12–19. I agree on both points.

To start, because PM-602-0199 was not at issue (and thus not vacated) in *Dorcas*, certain plaintiffs' claims as to that memorandum remain live. On that front, the plaintiffs aver that PM-602-0199 is arbitrary and capricious because it "subvert[s] decades of congressionally mandated routes to adjustment under Section 245 of the INA, which were enacted in response to the particular urgencies presented when lawfully admitted noncitizens are prima facie eligible to obtain legal permanent residency while physically present in the United States." 3d Am. Compl. ¶ 194. This challenge under Section 706(2)(A) of the APA is unlikely to succeed for two reasons.

First, it is doubtful that the guidance constitutes final agency action, which must "mark the consummation of the agency's decision-making process" and "must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation modified). The memorandum explicitly states that it "may not be relied upon to create any right or benefit, substantive or procedural,

11

enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner." *See* PM-602-0199 at 6. Instead, the memorandum merely "reminds officers and the public that adjustment of status under section 245 of the Immigration and Nationality Act (INA) is a matter of discretion and administrative grace not designed to supersede the regular consular processing of immigrant visas." *Id.* at 1; *see* Resp. at 5 (explaining that the memorandum "operates as a reminder"). The memorandum also "does not remove [USCIS personnel's] discretion in making adjudicatory decisions," decisions more akin to final agency action. PM-602-0199 at 6. Importantly, even setting aside the memorandum's disclaimers, the plaintiffs fail to identify any part of the memorandum marking the consummation of USCIS decision making, determining their rights, or otherwise precipitating legal actions.

Second, even were the memorandum final agency action, the government persuades that PM-602-0199 "does not apply to the CAA" in the first place. Resp. at 5. Again, PM-602-0199 explains the government's "preference for aliens seeking to immigrate through the ordinary immigration process from abroad through consular processing." PM-602-0199 at 3. Thus, "Congress expects aliens paroled into the United States or admitted into the United States as nonimmigrants to depart rather than pursue adjustment of status" under Section 245(a). *Id.* at 4. The CAA, on the other hand, permits an alien to

12

seek adjustment of status "if he or she is a native or citizen of Cuba, was inspected and admitted or paroled into the United States, and meets the physical presence requirement." Resp. at. 4 (citing Pub. L. No. 89-732, § 1). In other words, the CAA is not an "exception to the regular consular process," PM-602-0199 at 6, but "is a special program available only to Cuban nationals . . . *physically present* in the U.S., and not at a consulate," Resp. at 5–6 (emphasis added). I therefore do not see how PM-602-0199 would apply to the plaintiffs' adjustment of status petitions under the CAA.

Because PM-602-0199 does not apply to CAA petitioners, the plaintiffs' arbitrary and capricious claims are likely to fail. If those claims fail, only the plaintiffs' claims for unreasonable delay under Section 706(1) of the APA and claims under the Mandamus Act remain. But, as the government argues and as I explained in my previous order, "I almost certainly lack jurisdiction" to review those claims. Order at 8.

Title 8, United States Code, Section 1252(a)(2)(B)(ii) strips courts' "jurisdiction to review" any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." Under § 1255(a), "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney

13

General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if" the alien meets enumerated requirements. "In other words, § 1255(a) gives the Department of Homeland Security and USCIS broad discretion to determine and implement the adjudicative process for Form I-485 applications, within the bounds set by statute." *Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307 (11th Cir. 2025). Likewise, the CAA, as a "historic note to [Section] 1255," Resp. at 3, "gives complete discretion over the adjustment of immigration status to USCIS," *Vega v. Noem*, No. 25-CV-26047-RAR, 2026 WL 1740033, at *3 (S.D. Fla. Mar. 25, 2026); *accord Valdivia v. U.S. Att'y Gen.*, 380 F. App'x 793, 795 (11th Cir. 2010) (per curiam) ("Because an adjustment of status under the [CAA] is a discretionary decision, [courts] do not have jurisdiction to review the petitioners' petition for review except to the extent it raises a constitutional claim or question of law.").

Section 1255(a)'s grant of discretion extends even to "actions taken in the course of the decision-making process—including the pace at which that process is undertaken." *Kanapuram*, 131 F.4th at 1307. Thus, Section 1252(a)(2)(B)(ii) "precludes jurisdiction over challenges to USCIS delays in adjudicating Form I-485 adjustment of status applications," *id.* at 1306; *see also Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1214 (M.D. Fla. 2007) (concluding that § 1252(a)(2)(B)(ii) barred judicial review of the pace at which USCIS

14

processes a Form I-485 petition), including petitions filed under the CAA, *see Vega*, 2026 WL 1740033, at \*3–4. The same goes for Form I-765 petitions, which may be filed "[d]uring the pendency of the I-485 application." *Kondapally v. U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 10, 19 (D.D.C. 2021); *see id.* at 26 ("[C]ourts have routinely held that approving or denying the I-765 application . . . and deciding whether to extend the EAD period to encompass the pendency of any review, are decisions committed to USCIS's discretion and outside the purview of judicial review.").

And just as Section 1252(a)(2)(B)(ii) precludes jurisdiction over the plaintiffs' APA claims, it also "explicitly strips the district court of jurisdiction under the mandamus statute." *See Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 420 (11th Cir. 2009) (per curiam); *see also Vega*, 2026 WL 1740033, at \*4 (denying mandamus relief where the plaintiff failed to "demonstrate a clear right to the relief requested in large part because there is no congressionally or administratively prescribed timeframe within which USCIS has a duty to process or adjudicate I-485 petitions") (citation modified). Plaintiffs thus fail to show a likelihood of success on the merits of any of their claims because "[a]bsent jurisdiction, I cannot reach the merits, let alone find in favor of the plaintiffs."[7] Order at 10.

---

[7] Because I lack jurisdiction over the unreasonable delay claims, I need not consider the defendants' arguments regarding the *TRAC* factors. *See* Resp. at 21–23.

### ii. Irreparable Injury

Moving to irreparable injury, my views remain unchanged since adjudicating the plaintiffs' request for a temporary restraining order.

To be sure, the plaintiffs speculate that USCIS's delay in adjudicating their petitions "actively exposes Plaintiffs to the real risk of detention and removal by ICE." Mem. at 11. But they do not allege that any of the 143 plaintiffs have been contacted by immigration authorities or placed in removal proceedings. In fact, as the government notes, the plaintiffs' general statistics regarding ICE detention relate to the Miami area, whereas the Middle District "is covered by ICE's Orlando Field Office." Resp. at 24. That the plaintiffs might be "vulnerable" to such enforcement, *see* Mem. at 11–12, without more, is not enough to justify emergency relief, especially where "adjudication of [the plaintiffs'] applications is not certain to be in their favor," Resp. at 24.

As for the plaintiffs' claim that they "would not only suffer lost wages but would lose the legal ability to work at all," Mem. at 13, the plaintiffs still do not explain the immediacy of this risk. The plaintiffs filed this action on May 4, 2026, (Doc. 1), and the most recent challenged policy memorandum was issued over two months ago on May 22, 2026, *see* Mem. at 2–3. That the plaintiffs failed to seek emergency relief before now belies their claim that they face a risk of harm that is both imminent and irreparable. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a

16

preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."). In any event, "adjudications have resumed and decisions granting I-765s have recently issued," Resp. at 25, further undercutting any risk of irreparable harm.

The plaintiffs' failure to show a risk of irreparable injury absent a preliminary injunction "is fatal" to their motion. *Am. Civil Liberties Union of Fla.*, 557 F.3d at 1198.

### C. Improper Joinder and Venue

Finally, the defendants argue that "[i]njunctive relief is also inappropriate because the Plaintiffs have been improperly joined and should be severed," and because "some Plaintiffs have not established that venue in this Court is appropriate." Resp. at 9. While I would independently deny the motion for injunctive relief, I agree there are joinder and venue issues. The plaintiffs' broader challenges to PM-602-0192 or PM-602-0194 are likely moot, the challenge to PM-602-0199 is unlikely to succeed on the merits, and I am likely without jurisdiction over the remaining unreasonable delay and mandamus claims (which do not attack specific challenged policies). But even if I had jurisdiction over the latter set of claims, it is unclear how the 143 plaintiffs' claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a); *see* Order at 5 n.2.

The third amended complaint joins 143 plaintiffs and the present motion

17

asks that I order the defendants to adjudicate those 143 plaintiffs' various petitions "within 30 days," a timeline found nowhere in the INA or USCIS's regulations. Mot. at 1. The applications were filed anywhere from five to thirty-five months ago. *See* 3d Am. Compl. ¶¶ 16, 50. Although "USCIS generally adjudicates I-485s and I-765s on a first in and first out basis," Resp. at 21, USCIS's discretion in adjudicating the petitions, including the pace at which it does so, is significant. And, as the government explains, "[t]he processing and adjudication of I-485 and I-765 applications are highly particularized and fact-intensive processes for each applicant." Resp. at 10; *see id.* (explaining that an alien's "underlying immigration status, factual background, what security screening may be needed, and when the applicant applied all contribute to the adjudication pace of an application"). Reduced to its core unreasonable delay claim, the plaintiffs' complaint does not fairly allege that these separately filed petitions form a single "transaction." FED. R. CIV. P. 20(a).

Compounding this issue, it is uncertain that the plaintiffs allege proper venue under 28 U.S.C. § 1391(e)(1). While the complaint represents that the plaintiffs filed their Form I-765 and I-485 petitions "while physically residing in" the Middle District of Florida, it is not clear that those plaintiffs resided here when this action was filed. *See, e.g.*, 3d Am. Compl. ¶ 17. In fact, the plaintiffs' motion represents that "most, if not all, Plaintiffs in this action also physically reside in South Florida." Mot. at 11. If true, the government

18

persuasively argues that "the proper venue for those Plaintiffs' claims is either in the district where the USCIS field office processing their application is located or where the Plaintiffs actually reside." Resp. at 12.

Given the outstanding questions regarding joinder and venue, as well as mootness, the plaintiffs must address (1) which individual plaintiffs' petitions have been adjudicated, (2) why venue is proper in this District, and (3) why the unreasonable delay claims should not be severed.

## IV.  CONCLUSION

Because the plaintiffs fail to establish a likelihood of success on the merits or that they face a risk of irreparable harm absent an injunction, the motion for preliminary is denied. I separately direct the plaintiffs to address the propriety of the remainder of this action. Accordingly, it is **ORDERED:**

1. Plaintiffs' Motion for a Preliminary Injunction (Doc. 25) is **DENIED**.

2. **No later than August 13, 2026**, the plaintiffs shall provide this Court notice of which individual plaintiffs' Form I-485 and Form I-765 petitions have been adjudicated by USCIS.

3. Additionally, no later than **August 13, 2026**, and in a memorandum not to exceed twenty pages, the plaintiffs are ordered to (1) show cause why those plaintiffs whose petitions have been adjudicated should not be dismissed for lack of standing,

19

(2) identify which plaintiffs reside outside of the Middle District of Florida and explain why those plaintiffs should not be dismissed for lack of venue, and (3) show cause why any remaining plaintiffs' claims should not be severed under Federal Rule of Civil Procedure 21.

**ORDERED** in Tampa, Florida, on July 30, 2026.

Kathryn Kimball Mizelle
United States District Judge